UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>RAMESH CHAKRAPANI,<br><br>    Defendant. | Case No. 09 Civ. 00325 (RJS) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NICOS ACHILLEAS STEPHANOU,<br>RAMESH CHAKRAPANI,<br>ACHILLEAS STEPHANOU,<br>GEORGE PAPARRIZOS,<br>    a/k/a GEORGIOS PAPARRIZOS,<br>KONSTANTINOS PAPARRIZOS,<br>MICHAEL G. KOULOUROUDIS,<br>JOSEPH CONTORINIS,<br><br>    Defendants. | Case No. 09 Civ. 01043 (RJS) |

**DEFENDANT RAMESH CHAKRAPANI'S MEMORANDUM OF LAW IN
OPPOSITION TO THE GOVERNMENT'S APPLICATION TO INTERVENE
AND STAY DISCOVERY**

                                 WILSON SONSINI GOODRICH & ROSATI PC
                                 Michael S. Sommer (MS-2727)
                                 Mitchell Epner (ME-8256)
                                 1301 Avenue of the Americas, 40th Floor
                                 New York, New York 10019
                                 Tel: 212.999.5800
                                 Fax: 212.999.5899

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................ 4

I.      The Balancing of Interests Weighs Heavily in Favor of Denying the Government's Motion to Stay Discovery .................................................................. 4

        A.    The Status of This Case Makes a Discovery Stay Inappropriate ................ 6

        B.    The Government Will Not Be Prejudiced If Its Stay Request is Denied .... 8

        C.    Mr. Chakrapani Would Suffer Extreme Prejudice if a Discovery Stay Were Granted ................................................................................................. 11

        D.    The Interests of Justice and the Public Mandate Denial of the Stay ......... 12

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arden Way Assocs v. Boesky*, 660 F. Supp. 1494 (S.D.N.Y. 1987).................................12

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)...........................................................................9

*Berger v. United States*, 295 U.S. 78 (1935) ......................................................................11

*Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989).......................5

*Hicks v. City of New York*, 268 F. Supp. 2d 238 (E.D.N.Y. 2003) .....................................4

*Horn v. District of Colombia*, 210 F.R.D. 13 (D.D.C. 2002) .........................................5, 9

*In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990) ................................................................11

*In re Worldcom Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 2002
    WL 31729501 (S.D.N.Y. Dec. 5, 2002) ...................................................................5, 6, 9

*Nosik v. Singe*, 40 F.3d 592 (2d. Cir. 1994).........................................................................5

*SEC v. Beacon Hill Asset Mgmt. LLC, et al.*, No. 02 Civ. 8855 (LAK),
    2003 WL 554618 (S.D.N.Y. Feb. 27, 2003)..............................................................6, 8

*SEC v. Bradstreet*, No. CA-95-11647-DPW (D. Mass. Oct. 16, 1995).............................13

*SEC v. Chestman*, 861 F.2d 49 (2d. Cir. 1988)....................................................................8

*SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126 (S.D.N.Y.
    Jan. 26, 1993)..........................................................................................................7, 8, 11

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Cir. 1980)......................................................5

*SEC v. Oakford*, 181 F.R.D. 269 (S.D.N.Y. 1998) .........................................................9, 13

*SEC v. Poirier*, 97-CV-3478-WBH (N.D. Ga. Feb. 13, 1998) ....................................11, 13

*SEC v. Reyes*, No. C06-4435 (CRB) (N.D. Cal. Oct. 4, 2006) ..........................................14

*SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005) ................................................................9, 10

*SEC v. Tucker*, 130 F.R.D. 461 (S.D. Fla. 1990)................................................................13

*SEC v. Yuen*, No. CV 03-4376 MRP (PLAx) (C.D. Cal. Oct. 28, 2003)........................8, 12

*Semon v. Stewart*, No. 02 Civ. 6273 (S.D.N.Y. Sept. 30, 2003)..........................................8

*United States v. Any and All Assets of That Certain Business Known As
    Shane Company*, 147 F.R.D. 99 (M.D.N.C. 1993)...............................................7, 8

*United States v. Gieger Transfer Serv., Inc.*, 17 F.R.D. 382 (S.D. Miss.
 1997) ..............................................................................................................13

*United States v. Leasehold Interests in 118 Ave. D, Apt. 2A*, 754 F. Supp.
 282 (E.D.N.Y. 1990)........................................................................................9

*United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352
 (S.D.N.Y. 1966).......................................................................................... 6-7

*Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36
 (S.D.N.Y. 1993)..........................................................................................5, 6

## RULES

Fed. R. Civ. P. 26..........................................................................................................6

## MISCELLANEOUS

*Hon. Milton Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D.
 201 (March 1990) .........................................................................................4

## INTRODUCTION

Ramesh Chakrapani respectfully submits this memorandum of law in opposition to the motions to stay discovery filed by the United States Attorney's Office (the "government") in the above-captioned matters.  Mr. Chakrapani stands accused of no crime, but by its motions, the government seeks to foreclose him for some indeterminate period of time from obtaining the critical discovery needed to confront the allegations against him asserted by the Securities & Exchange Commission (the "SEC") and thereby clear his name and return to gainful employment.

As discussed at the pre-motion conference before this Court on June 24, 2009, the government's letter requesting a pre-motion conference had failed entirely to address the substantial prejudice to Mr. Chakrapani that would be occasioned by a stay of discovery relating to Nicos Stephanou ("Nicos") – the only witness who has alleged any wrongdoing by Mr. Chakrapani.  Such a stay, as the Court recognized, would assure that Mr. Chakrapani remained suspended from work and with no source of income for at least a year and in all likelihood much longer.  And the basis offered by the government to justify this substantial and certain prejudice to Mr. Chakrapani was the government's unfounded supposition that the criminal defendants would fabricate evidence if given access to Nicos' story sooner than the Federal Rules of Criminal Procedure would otherwise require.  The government's letter had failed to identify a single decision of this Court or the Second Circuit in which such rank speculation by the government had overcome such clear prejudice to a defendant.  The government's letter had also failed to acknowledge that its desire to shield its cooperator from scrutiny pursuant to the Federal Rules of Civil Procedure was one of its own making – having worked closely with the SEC on this investigation, and having coordinated the filing of contemporaneous criminal and civil complaints.

Remarkably, having been given the opportunity to supplement its letter with a brief, the government's brief in support of its motions has not remedied a single one of

1

the deficiencies contained in the government's letter and about which Your Honor expressed serious concern on June 24th. The government still fails to balance the equities, implicitly acknowledging the substantial prejudice Mr. Chakrapani would suffer from the requested stay; the government still can only speculate about the possibility of some negative impact on the criminal case by allowing Mr. Chakrapani to avail himself of the discovery permitted by the Federal Rules of Civil Procedure; the government still fails to cite a single case supporting a stay when the enormous prejudice to a civil defendant is so plain; and the government still fails to acknowledge that if it truly had a legitimate law enforcement interest in protecting its cooperator from civil discovery, it could have worked with the SEC to postpone the filing of the SEC's complaints until after the criminal cases were resolved – thereby eliminating the prejudice to Mr. Chakrapani since he would still be employed today.

These deficiencies in the government's brief are not mere oversight. The balancing of the equities clearly weighs in favor of denying the government's motion; the government's speculation cannot outweigh the clear prejudice a stay would impose on Mr. Chakrapani; and there are no cases supporting the extraordinary remedy sought by the government, particularly where the government finds itself in a situation of its own making. Accordingly, and as set forth more fully below, the Court should deny the government's motion.

## FACTUAL BACKGROUND

Until January 12, 2009, Mr. Chakrapani was employed as the Managing Director in the London office of The Blackstone Group ("Blackstone"), a prestigious private equity firm headquartered in New York City. On that day, the government arrested Mr. Chakrapani at a New York area airport immediately upon his stepping off of a flight from London on the strength of allegations from a single cooperating witness, Nicos Stephanou. On January 13, 2009, the government filed a criminal complaint against Mr. Chakrapani, alleging insider trading in the securities of Albertson's Inc. ("Albertson's").

2

That same day, the SEC filed a civil enforcement action against Mr. Chakrapani, predicated on substantially similar facts as the criminal complaint ("SEC Case # 1"). Both actions allege that Mr. Chakrapani, while working in the New York office of Blackstone, had access to material, nonpublic information concerning the acquisition of Albertson's and tipped a friend who then traded in this security. The entirety of the allegations in these complaints stem from statements purportedly made to the government by Nicos – a former colleague of Mr. Chakrapani who was arrested for insider trading in December 2008.

After his well-publicized arrest, Mr. Chakrapani was unceremoniously suspended from his job at Blackstone, forced to vacate his corporate apartment in London and move into his parents' home in Cerritos, California. His professional reputation remains tarnished by the cloud of suspicion created by these civil and criminal charges.

On February 4, 2009, the government filed criminal charges against Nicos, Michael Koulouroudis, George Paparrizos, and Joseph Contorinis for conspiracy and securities fraud arising from schemes to execute securities transactions based on material, nonpublic information that had been obtained from Nicos. Nicos, pursuant to a cooperation agreement with the government, pleaded guilty to a criminal information charging him with conspiracy and securities fraud. George Paparrizos also pleaded guilty without a cooperation agreement. Defendant Michael Koulouroudis has been indicted and is awaiting trial, and Defendant Joseph Contorinis has yet to be indicted after more than 5 months since the criminal complaint against him was filed.

Again, the government and the SEC coordinated their respective efforts, and on February 5, 2009, the day after the above criminal charges were filed, the SEC filed a second complaint, naming Mr. Chakrapani, Nicos, Achilleas Stephanou (Nicos' father, "Achilleas"), George Paparizzos, Konstaninos Paparizzos, Michael Koulouroudis, and Joseph Contorinis ("SEC Case # 2"). With respect to the claims related to Mr. Chakrapani, this second complaint alleges insider trading with respect to the securities of

3

National Health Investors, Inc. ("NHI"). Specifically, the SEC alleges – based on statements purportedly made to the government by Nicos – that Mr. Chakrapani tipped Nicos with material, nonpublic information regarding the potential acquisition of NHI.

For a three month period between January 2009 and April 2009, the government continued its criminal investigation of Mr. Chakrapani for his alleged conduct both with with respect to Albertson's and NHI. On April 28, 2009, the criminal complaint against Mr. Chakrapani was dismissed. Mr. Chakrapani, however, remains suspended from employment by Blackstone based on the pending SEC actions against him. He has answered both civil complaints against him, unequivocally denying any wrongdoing.

Based on the SEC's complaints, Nicos appears to be the only individual alleging that Mr. Chakrapani engaged in any wrongdoing. As the Court is well aware, in order for Mr. Chakrapani to resume his career, he must prevail in these cases and clear his name. Accordingly, in order to expedite the discovery phase of the cases, on the very day of the first pre-trial conference before Your Honor, Mr. Chakrapani began serving discovery requests. On June 11, 2009, Mr. Chakrapani served a subpoena on Nicos for documents relating to the allegations of insider trading in ABS and NHI securities. The instant motion from the government followed.

## ARGUMENT

I. **The Balancing of Interests Weighs Heavily in Favor of Denying the Government's Motion to Stay Discovery**

A stay of civil proceedings pending the outcome of criminal proceedings is a heavily disfavored, extraordinary remedy. *See* Hon. Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 209 (March 1990) (explaining the "strong presumption in favor of discovery that any party – the Government no less than any other litigant – must overcome if it seeks to withhold production or depositions"); *see also Hicks v. City of New York*, 268 F. Supp. 2d 238, 241, 243 (E.D.N.Y. 2003) ("A stay of a civil case is an extraordinary remedy . . . [a] court's interest is usually best served by

discouraging motions to stay"). In fact, numerous courts have held that simultaneous parallel civil and criminal proceedings are "unobjectionable under our jurisprudence." *See SEC v. Dresser Indus.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980); *see also Nosik v. Singe,* 40 F.3d 592, 596 (2d. Cir. 1994) ("Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter") (internal citations omitted).

The government faces a steep burden to make a particularized showing that their requested stay is appropriate "in light of the particular circumstances and competing interests involved in the case." *See Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). To meet its burden, the government must show that it would suffer hardship if the requested stay is not granted and that any stay would not unduly burden the defendants by its scope or duration. In determining whether to grant a motion for a stay, courts should consider the following:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*See Horn v. District of Colombia*, 210 F.R.D. 13, 15 (D.D.C. 2002).[1]

Of these factors, the government's brief addresses only two: the purported prejudice to the government and judicial economy – and does so by lumping the civil defendants together into one group. The government completely ignores the fact that Mr. Chakrapani does not face criminal charges and that his continued employment and career are dependant on a prompt resolution of the SEC cases. The government's

---

[1] This test is also set forth in cases cited by the government. *See Volmar Distributors, Inc. v. New York Post Co., Inc*., 152 F.R.D. 36 (S.D.N.Y. 1993); *Worldcom Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002).

5

arguments, in any event, prove unavailing, as all of these factors (including the two addressed by the government) weigh in favor of denying the motion for a stay.

### A. The Status of This Case Makes a Discovery Stay Inappropriate

As the Court is well aware, Mr. Chakrapani is not a criminal defendant. As a defendant in only the civil action, Mr. Chakrapani is entitled to full discovery under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26 (a party to a civil proceeding is presumptively entitled to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .").

The cases cited by the government fail to address Mr. Chakrapani's status as a civil defendant who strongly opposes a discovery stay. Instead, the government relies on cases where the defendants in the civil action themselves moved to stay civil discovery or where they consented to the government's motion for a stay. *See Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993) (defendants moved to stay discovery pending resolution of criminal matters based on Fifth Amendment concerns); *In re Worldcom Sec. Litig.*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002) (defendants moved to stay discovery pending the resolution of criminal charges based on Fifth Amendment rights and limited financial resources); *SEC v. Beacon Hill Asset Mgmt. LLC, et al.*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (one defendant "professe[d] its consent" to the relief sought by the government and remaining defendants "in principle [did] not oppose the stay"). These cases are totally inapposite to the instant action where only the government has moved to stay discovery, the non-cooperating defendants uniformly oppose a stay, and even the cooperating witness – also a defendant in both the criminal and civil actions – has not consented to a stay.

Scrutiny of the other cases cited by the government reveals that they bear no relevance here. For example, in *United States v. One 1964 Cadillac Coupe DeVille*, 41

6

F.R.D. 352 (S.D.N.Y. 1966) and *United States v. Any and All Assets of That Certain Business Known As Shane Company*, 147 F.R.D. 99 (M.D.N.C. 1993), the courts were deciding whether to stay civil forfeiture actions pending a parallel criminal investigation. In *Coup DeVille*, the stakeholder in the civil forfeiture action was also a defendant in a parallel criminal action, and the court found that the civil discovery sought by the defendant/stakeholder was directed entirely at securing information for defense of the criminal action.  41 F.R.D. at 354.  In *Shane Company*, the Court granted a temporary stay of civil discovery pending the government's criminal investigation, particularly given that the Defendants sought "use immunity from prosecution if noticed for deposition." 147 F.R.D. at 102.  Under these circumstances, the *Shane Company* court held that a short stay of discovery (approximately 5 weeks) was appropriate.  Since Mr. Chakrapani is not a criminal defendant, no criminal investigation is pending against him, and he does not seek any form of immunity from his discovery responses, these cases are entirely irrelevant.

The government's citation to *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993), is likewise to no avail.  In that case, each of the civil defendants was also a target in the parallel criminal investigation.  That is plainly not the case here.  Moreover, the *Downe* court balanced the respective prejudice to the parties and, in granting a three-month stay of discovery, held that the defendants opposing the stay had "failed to demonstrate that they will suffer any prejudice if all discovery is stayed in the civil action for a limited duration." *Id*. at *13.  The government's application here is in sharp contrast to that in *Downe*.  Here, the government seeks a stay of unlimited duration, and it fails entirely to address the balance of hardships, apparently recognizing that any such argument would be futile since the prejudice to Mr. Chakrapani is so acute.

In the end, the government still fails to cite a single decision from this Court or any other where a stay of civil discovery was granted over the objection of a civil

7

defendant who indisputably would suffer substantial prejudice by the imposition of such a stay.

### B. The Government Will Not Be Prejudiced If Its Stay Request is Denied

Apart from failing to cite a single case that supports its motion, the government has also failed to demonstrate that it will suffer any true prejudice if discovery in the SEC cases goes forward. The government's first claim of prejudice – that the Defendants would receive more discovery than the criminal rules provide – is unavailing. To begin, this argument has no applicability to Mr. Chakrapani, who is not a criminal defendant and is thus entitled to that discovery permitted by the Federal Rules of Civil Procedure. Moreover, courts routinely have held that the possibility of prejudice to the government in providing civil discovery to a defendant in parallel criminal and civil matters is not a valid basis to stay discovery. *See SEC v. Yuen*, No. CV 03-4376 MRP (PLAx), slip op. at *12-13 (C.D. Cal. Oct. 28, 2003) (the fact that defendants in the SEC action will obtain broader discovery than under criminal procedure rules was not relevant to the court's determination as to whether or not it should stay discovery pending resolution of the parallel criminal proceeding) (*see* Affirmation of Mitchell Epner ("Epner Aff.") at Ex. A); *Semon v. Stewart*, No. 02 Civ. 6273 (S.D.N.Y. Sept. 30, 2003), Tr. at 18-22 (denying government's motion to prevent depositions in civil action of individuals who were expected to testify at criminal trial; the fact that criminal discovery rules are more restrictive was irrelevant to scope of discovery in civil action) (*see* Epner Aff. at Ex. B).[2] The government's argument boils down to an untenable assertion that discovery in the SEC actions should be precluded because it would deprive the government of the tactical advantages that it believes may be afforded to the government by the rules of criminal

---

[2] The government cites a number of cases for the proposition that it has an interest in not allowing a criminal defendant to circumvent discovery limitations. *See SEC v. Chestman*, 861 F.2d 49 (2d. Cir. 1988); *Beacon Hill*, 2003 WL 554618, at *1; *Shane Company*, 147 F.R.D. at 101-102; *Downe*, 1993 WL 22126 at *12-13. The government cites no cases, however, holding this interest is implicated by the civil discovery sought by Mr. Chakrapani, who is not a defendant or target in the pending criminal matter.

procedure. *See SEC v. Oakford*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("there is no cognizable harm to the government in providing such discovery beyond its tactical desire to maintain a tactical advantage.").[3]

The government next asserts that it will be prejudiced by civil discovery because it assumes that the criminal defendants will manufacture evidence or tailor their testimony to conform with the government's proof. This claim is insulting – it is nothing more than a misguided assertion that all criminal defendants will engage in obstruction of justice by fabricating evidence, if given the opportunity. The government cites no authority for this argument, which in the past has been routinely rejected. *See United States v. Leasehold Interests in 118 Ave. D*, *Apt. 2A*, 754 F. Supp. 282, 287 (E.D.N.Y. 1990) ("mere conclusory allegations of potential abuse or simply the opportunity by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay.") (emphasis in original); *Horn*, 210 F.R.D. at 16 (holding that "likely interference" in the criminal action is too speculative to constitute good cause in support of a stay) (internal alteration omitted).

Lastly, the government argues that it might suffer some prejudice if Nicos is deposed in the civil cases. Again, this argument misses the mark. The government relies on two cases, *WorldCom* and *SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005). In *WorldCom*, the application for a stay of two civil securities cases came from *the criminal defendants*, not the government (who submitted a letter supporting the stay). Thus, the procedural posture of *WorldCom* renders it entirely inapposite and inapplicable here. The *WorldCom* court never held (and was never presented with the argument) that the

---

[3] The government's suggestion – that it would somehow be prejudiced should one or more of the criminal defendants assert his Fifth Amendment protections at a deposition taken by the SEC – is preposterous. At a criminal trial, the fact that a defendant invoked the Fifth Amendment would plainly be inadmissible. At a civil enforcement trial, should a defendant invoke the Fifth Amendment, the SEC is entitled to a negative inference based on such an invocation. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Accordingly, neither the government nor the SEC could be slightly prejudiced by a criminal defendant's hypothetical future assertion of the Fifth Amendment.

government's interest in avoiding civil discovery from a cooperating witness was of such gravity that it outweighed demonstrable prejudice to a defendant objecting to the stay. Nor could it, as the defendants facing civil enforcement actions and criminal actions initiated the application for stay, not the government.

The government's citation to *Saad* ignores the language of that decision, which soundly rejected the contention "that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then . . . be relieved of the consequences that will flow if the two actions proceed simultaneously." *Saad*, 229 F.R.D. at 91.  For that reason, the *Saad* court rejected the government's attempt to preclude defendants (who, unlike Mr. Chakrapani, were both civil and criminal defendants) from obtaining discovery as provided under the Federal Rules of Civil Procedure.  The *Saad* court concluded its opinion by stating:

> The U.S. Attorney's argument, therefore, boils down in the end to its standard complaint that the defendants are getting a "special advantage" because, if they were only facing a criminal indictment, they would not be entitled to these notes at this time.  ***But the defendants were not just facing a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending in such an action***.

*Id*. at 92 (emphasis added).  The *Saad* court's admonition to the government that civil discovery is no "special advantage" is even more applicable here, because Mr. Chakrapani – unlike the *Saad* defendants – is only a civil litigant and not a criminal defendant.

Even if it were true that Nicos's credibility would be better preserved by shielding him from civil discovery, this could not possibly justify the stay sought by the government.  Nicos has been cooperating with the government since December 2008.  In that time, he has told his story to both the government and the SEC – likely on numerous occasions.  To the extent civil discovery reveals that Nicos is not a credible witness, that

10

information does not constitute undue prejudice to the government, which is bound to seek justice not merely convictions.  Indeed, such a revelation would clearly be in the interests of justice.  *See Berger v. United States*, 295 U.S. 78 (1935) (the government's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done.").  Moreover, the government has not offered any argument explaining how it is either fair or appropriate for the SEC to be able to avail itself of discovery from Nicos while blocking a defendant in the SEC case from doing the same.  *See In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990) (government must show more than the mere possibility of prejudice, and must make a specific showing of the harm that might be suffered); *SEC v. Poirier*, 97-CV-3478-WBH, slip op. at 4 (N.D. Ga. Feb. 13, 1998) (denying stay because the government "failed to present any specific showing of potential harm that it will suffer if this action is not stayed") (*see* Epner Aff. at Ex. C).  Accordingly, the government has failed to articulate any prejudice – let alone substantial prejudice – outweighing the certain prejudice to Mr. Chakrapani.

        **C.**        **Mr. Chakrapani Would Suffer Extreme Prejudice if a Discovery Stay Were Granted**

The government, not surprisingly, fails to address the substantial prejudice a stay would inflict on Mr. Chakrapani.  Nicos is plainly the key witness in the civil actions pending against Mr. Chakrapani.  While the government characterizes its requested stay as being "limited," as noted at the pre-motion conference, the limitation is a mirage.  The government's proposed stay would curtail any meaningful discovery in this action and bring Mr. Chakrapani's investigative efforts to a standstill for a year or more, because without having the benefit of discovery from Nicos, it will be impossible to logically direct other discovery efforts.  *See, e.g., Downe*, 1993 WL 22126, at \*14 (government's request for limited stay shielding critical witness denied since it would lead to "duplicative depositions" and "an unfair litigation advantage" for the plaintiff; "It would be unfair and prejudicial to defendants to require them to continue with discovery without

11

first having the opportunity to depose [the critical witness] and receive any other information relating to [the critical witness] that would have otherwise been available to them in the absence of a stay.")

There is no question that Mr. Chakrapani's ability to vindicate himself in a timely way would be prejudiced if the government's request for a stay were granted. *See Yuen*, No. CV 03-4376, slip op. at 5 (finding that denying the stay "serves any potential interest the Defendants' have in seeing their names cleared"). Until Mr. Charkapani resolves the SEC claims pending against him, he will remain suspended from his position as Managing Director at Blackstone. During this time, he will receive no salary and has been displaced from his residence and now living with his parents. His opportunities for other employment in his chosen profession are also understandably non-existent until the SEC cases are resolved. In Mr. Chakrapani's case, justice delayed would surely equal justice denied.

### D. The Interests of Justice and the Public Mandate Denial of the Stay

Finally, the government's contention that a discovery stay will likely result in narrowing of the factual and legal issues before this Court does not withstand scrutiny. While the government claims that any potential criminal convictions will increase the likelihood of civil settlements, it concedes that this argument does not apply to Mr. Chakrapani. Govt. Br. at 9-10. Yet even as applied to the other defendants, this argument is still unpersuasive. Courts in this district have noted that "a policy of issuing stays 'solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration.'" *See Arden Way Assocs v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (citation omitted).

An even more compelling reason to deny the stay based on the interests of justice and the public, however, is that the government and the SEC coordinated their respective

12

charges against the defendants.  They worked together on the investigation, and agreed to bring their respective complaints on the same day.  If the government truly had a legitimate law enforcement interest in protecting its cooperator from civil discovery, it could have worked with the SEC to postpone the filing of the SEC's complaints until after the criminal cases were resolved – thereby eliminating the prejudice to Mr. Chakrapani since he would still be employed today.   But by the SEC having brought its charges on a coordinated basis with the government, and having tarnished Mr. Chakrapani's reputation and career, the SEC should be required to move forward.  The public's confidence in the SEC would be further eroded if the SEC was permitted to bring claims such as those in its complaints, well aware of the impact such claims will have on an individual employed in the financial industry, and then leave an individual dangling for more than a year with no opportunity to clear his name or support himself.

It is for this reason that Courts routinely deny stay motions where the government brings simultaneous criminal and civil proceedings and then seeks a stay of the pending civil action in order to retain a tactical advantage it hopes to enjoy under the criminal discovery rules.  *See Poirier*, 97-CV-3478-WBH, slip op. at 5 (denying stay where "it was not the defendants, but rather two agencies of the same government, that instituted these parallel proceedings"); *Oakford,* 181 F.R.D. at 273 ("[t]o use the federal courts as a forum for filing serious civil accusations that one has no intention of pursuing until a criminal case is completed is a misuse of the [the federal] courts."; *United States v. Gieger Transfer Serv., Inc.*, 17 F.R.D. 382, 385 (S.D. Miss. 1997) ("one . . . factor which almost inevitably results in denial for a stay is where the movant intentionally creates the impediment which he seeks to erect as a shield."); *see also SEC v. Bradstreet,* No. CA-95-11647-DPW (D. Mass. Oct. 16, 1995), Tr. at 15-17 (denying government's requested stay because "this is a problem of the United States Government's own making") (*see* Epner Aff. at Ex. D); *SEC v. Tucker*, 130 F.R.D. 461, 463 (S.D. Fla. 1990) (denying government's motion to intervene for the purpose of seeking a stay of civil discovery and

13

finding that "defendants have a right to defend [a parallel SEC enforcment case]"; *SEC v. Reyes*, No. C06-4435 (CRB) (N.D. Cal. Oct. 4, 2006) (minute order) (denying government's motion to stay civil discovery in SEC enforcement action) (*see* Epner Aff. at Exhibit E).

## **CONCLUSION**

For the foregoing reasons, Mr. Chakrapani respectfully requests that the Court deny the government's motion to intervene and stay discovery in the SEC actions.

DATED: July 9, 2009                  WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation

                                      By:      /s/ Michael S. Sommer
                                                     Michael S. Sommer (MS-2727)
                                                     Mitchell Epner (ME-8256)

                                           1301 Avenue of the Americas
                                           40th Floor
                                           New York, NY 10019-6033
                                           Telephone: (212) 497-7728
                                           Facsimile: (212) 999-5899

                                           Attorneys for Ramesh Chakrapani