UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>v.<br><br>NICOS ACHILLEAS STEPHANOU, RAMESH CHAKRAPANI, ACHILLEAS STEPHANOU, GEORGE PAPARRIZOS, a/k/a GEORGIOS PAPARRIZOS, KONSTANTINOS PAPARRIZOS, MICHAEL G. KOULOUROUDIS, and JOSEPH CONTORINIS,<br><br>                Defendants. | **Civil Action No. 09-1043 (RJS)** |

### DEFENDANT JOSEPH CONTORINIS' RESPONSE TO THE GOVERNMENT'S MOTION TO INTERVENE AND STAY DISCOVERY

Defendant Joseph Contorinis respectfully submits this response to the Government's Motion to Intervene and Stay Discovery in the above-captioned action. As the Court is aware, Mr. Contorinis has been charged by the United States Attorney's Office in a criminal complaint, captioned *U.S.* v. *Joseph Contorinis*, 09 Mag. 289 (not yet assigned), that is based on allegations that mirror those made in the complaint filed in this case. Mr. Contorinis has made a series of presentations to the government as to why he should not be charged criminally, and at least one further meeting has been scheduled.

In the meantime, and regardless of the outcome of those discussions, Mr. Contorinis respectfully opposes the government's request for a stay. As set forth in detail below, we believe that the S.E.C.'s decision to proceed with this action – a decision presumably made with the knowledge of (and no opposition from) the U.S. Attorney's Office – requires that discovery proceed, and neither the government nor the S.E.C. have offered compelling

arguments to the contrary. In the alternative – and if the Court is inclined to allow the government to "protect" its principal witness from discovery that is otherwise contemplated in an action that the S.E.C. chose to bring – those same protections should in fairness be extended to Mr. Contorinis himself.

## PRELIMINARY STATEMENT

The government's motion is premised on two assumptions:

First, the government suggests that it is somehow unfair for a defendant in a criminal case who has also been named in a civil proceeding to avail himself of the discovery contemplated by the Federal Rules of Civil Procedure. That premise is wrong. Contorinis did not choose to become part of the S.E.C.'s case, and he entitled to the ordinary discovery that the rules allow him in that action. To state that he would use civil discovery as an "end run" around the more limited discovery allowed in criminal cases unfairly suggests a tactical choice of his own making. Nothing could be further from the truth. Contorinis is an unwilling participant in both the S.E.C. and criminal proceedings, and seeks nothing more than the discovery he is entitled to in each case. Whether avenues of discovery available to him in a civil case would be available to him in the criminal case is irrelevant.

Second, the government states that Contorinis could use discovery obtained in the civil case to "manufacture evidence and tailor [his] testimony and defenses to conform with the Government's proof." (Gov. Br. at 9). That premise improperly assumes that Contorinis is guilty and needs to "tailor" his testimony or manufacture evidence, and that he would perjure himself and "manufacture evidence" if given the opportunity to do so. Setting aside that all defendants are presumed innocent until proven guilty – and that it is therefore inappropriate to "presume" that Contorinis would have any need or desire to "tailor his testimony" – the

2

government has offered no evidence to suggest that Mr. Contorinis presents a particular risk of obstruction or perjury.[1]

For these reasons, and others discussed below, the government's motion for any stay of discovery should be denied. In the event this Court disagrees, however, any stay imposed should extend to discovery sought of Mr. Contorinis himself. Under the government's proposed approach, both the S.E.C. and the government would get the fruits of civil discovery from the criminal defendants, while simultaneously precluding the defendants from conducting discovery of Nicos Stephanou. That result would be particularly unfair to the extent that the government effectively controls Stephanou by virtue of his cooperation agreement, and because the government (and, presumably, the S.E.C.) has already had access to him.

The one-sided stay contemplated by the government and the S.E.C. would therefore unfairly prejudice Mr. Contorinis, and place the S.E.C. at a tremendous and unjustified advantage in the civil litigation. To the extent there is any legitimate rationale for a stay raised by the government, those reasons support a more uniform stay, one that would prevent discovery as against any indicted defendant. Indeed, as between a criminal defendant (who is presumed innocent) and a cooperating witness (who has pled guilty), we respectfully submit that it is the cooperating witness – not the criminal defendant – who presents the greater risk of "tailoring testimony" based on discovery obtained in civil proceedings.

---

[1] The likelihood that Mr. Contorinis could "manufacture evidence" or perjure himself is particularly remote in this case, where we have disclosed his defense to the government and the S.E.C. in asking that no criminal case be brought.

Accordingly, the government's request for a partial stay should be denied. In the alternative, the court should order a stay of discovery that applies equally to both Nicos Stephanou and the other charged defendants.

## ARGUMENT

Mr. Contorinis joins in the arguments made in Mr. Chakrapani's Memorandum of Law and pre-motion letter to the Court, which we respectfully incorporate by reference. (Letter Br. of Mr. Chakrapani dated Jun. 16, 2009; Chakrapani Br. dated Jul. 9, 2009.) To the extent Mr. Contorinis' circumstances differ from Mr. Chakrapani's because Mr. Contorinis is charged in a criminal complaint and Mr. Chakrapani is not, we respectfully add the following points and authorities.

### A. Contorinis Is Entitled to Discovery In A Civil Suit That Was Brought By The S.E.C. Without Any Apparent Objection From The United States Attorney's Office.

The government argues that without a stay, the indicted defendants will get access to discovery they would not have a right to get in the criminal proceeding. (Gov. Br. at 7-8). While clearly true in a literal sense, it is not fair to say that this would amount to Mr. Contorinis improperly "taking advantage" of anything. The S.E.C. sued Contorinis, not the other way around. In seeking discovery, Contorinis only seeks to use the tools that the law makes available to all defendants in civil actions. This is particularly true in this case, where whatever problem is presented by differences in civil and criminal discovery is at a minimum a problem the S.E.C. and U.S. Attorney's Office could have foreseen and avoided. (*See* Chakrapani Br. 10, 13).[2]

---

[2] Similar reasoning applies to the government's claim that a stay will result in judicial efficiencies. The vast bulk of the relief available in the S.E.C. action is available in the criminal case upon conviction. Vice versa (and with the obvious exception of prison time),

### B. The Government's Claim That Contorinis Might Tailor His Testimony Or Manufacture Evidence Based On Civil Discovery Is Unfounded

The government argues that the stay should be granted because criminal defendants can use civil discovery to "manufacture evidence and tailor their testimony and defenses to the government's proof." That argument is guilt-assuming and, at least in this case, unsupported by any fact. First, and as indicated above, all criminal defendants are entitled to a presumption of innocence, and it is unfair to simply assume that they would commit the independent offenses of perjury or obstruction of justice if provided with civil discovery.[3] Second, we are not aware of any particular showing in this case that would suggest a willingness or ability on Mr. Contorinis' part to obstruct justice or manufacture evidence.

In any event, the risks described by the government are only incremental to risks that exist in every case. Because the government always produces Rule 16 discovery and always "goes first" in presenting its case, defendants will always have the opportunity to "tailor their testimony" or manufacture evidence to fit the government's proof. As a result, the government's claim of hardship amounts to a complaint about the timing, not the content, of what information Mr. Contorinis will learn before any criminal trial.

---

all of the relief available in the criminal case – including penalties, fines, disgorgement and steps to ensure that Contorinis be barred from the industry – is available in the S.E.C. enforcement action. Echoing an argument we have made to the U.S. Attorney's Office, we respectfully submit that the most expedient way to preserve resources for all parties (and for the public) is for the government to drop its criminal case entirely, and to allow the S.E.C. case to proceed in its stead.

[3]   By contrast, Stephanou has already pled guilty to insider trading and admitted to fraudulent conduct. As between a criminal defendant who should be presumed innocent and a convicted cooperating witness who has admitted to fraudulent conduct, we see no reason to assume that the former would be more likely to tailor his testimony than the latter.

### C. The Law Provides Well Established Procedures For The Invocation Of Fifth Amendment Rights In Civil Cases, And The Circumstances Do Not Require A Stay.

The government suggests that Contorinis' invocation of his Fifth Amendment privilege in the civil case would "play havoc" with discovery. (Gov. Br. at 10-11). That concern is overstated. As a threshold matter, the concerns created by invocations are ordinarily used to justify stays sought by defendants, not the government. (Chakrapani Br. 6). It is one thing to stay a case in order to prevent the infringement of a Constitutional right, which – unlike the circumstances advanced by the government here – does constitute a hardship. It is quite another to penalize defendants for exercising that right by prohibiting them from taking discovery to which they are otherwise entitled.

Moreover, the law already provides a "remedy" for whatever inconvenience might be imposed in civil litigation by a defendant's ultimate invocation of his Fifth Amendment rights. That remedy is an adverse inference, not a stay. *See U.S. v. 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995) (quoting *U.S. v Taylor*, 975 F.2d 402, 404 (7th Cir. 1992) ("A party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in litigation."). If the criminal defendants were to persist with invocations of their Fifth Amendment rights through trial, the S.E.C. would benefit from the adverse inference contemplated by the law. As for the government, we are aware of no effect the invocation would have on any interest of theirs.

### D. The Government Cannot Protect One Of The Civil Defendants At The Expense Of The Others

The government next argues that, absent a stay, Stephanou will become "less useful" to the government at trial. (Gov. Br. at 9). Setting aside that Stephanou, represented by experienced counsel, took no position as to this motion, (Pre-Motion Conf. Tr. 4:8–10, Jun. 24, 2009), he could of course seek to invoke his own Fifth Amendment rights when deposed. As a result, the government would have all other indicted defendants placed in the position of having to choose whether to be forced to suffer the consequences of invocation, while sparing Stephanou that choice. More importantly, the notion that an examination (or cross-examination) of Stephanou in a related proceeding makes him "less useful" assumes that his testimony is vulnerable to attack. To the extent his testimony would contain inconsistencies or gaps, fairness suggests that they should be exposed, not hidden. Regardless, concerns about the perceived "usefulness" of a government witness whose stated obligation is simply to testify truthfully should not overcome a party's right to the discovery allowed him by law.

It is worth noting in this respect that subjecting a witness in a criminal proceeding to a deposition in a parallel action need not affect his "usefulness." Cooperating witnesses are routinely called upon to testify multiple times – in re-trials, in trials of different defendants, in sentencing proceedings, and indeed in parallel civil proceedings. The fact that a cooperating witness may testify about the same matters more than once is not exceptional.[4]

---

[4] The government also suggests that a deposition of Stephanou would somehow hamper any further investigation. The government's papers do not allege facts in support of the position that an investigation is indeed "ongoing," or that discovery of Stephanou would interfere with those efforts.

### E.     If A Stay Is Granted, It Should Apply Equally To All Criminal Defendants

If a stay is granted, it should extend equally to Stephanou and to the other criminal defendants. Even the cases cited by the government would support this broader stay. For example, in *U.S. v. Downe,* 1993 WL 22126 (S.D.N.Y. 1993), Judge Leisure did not allow the limited stay sought by the government, but instead granted a global stay:

> "Even a cursory review of the complaint reveals that defendant Downe is the central figure in this action and, thus, the taking of Mr. Downe's deposition will be critical for the other defendants in this civil action. It would be unfair and prejudicial to the defendants to require them to continue with discovery without first having an opportunity to depose Downe and receive any other information relating to Downe which might otherwise be available to them in the absence of a stay. The S.E.C. would be the beneficiary of an unfair litigation advantage if the Court instituted a limited stay, rather than a stay of the entire action . . . . Moreover, a partial stay would lead to duplicative depositions since, once the partial stay is lifted and Downe is deposed, the defendants would probably find it necessary to conduct a second deposition of individuals who were deposed prior to Downe's deposition. Thus, a partial stay would likely result in additional expenses for the parties without expediting the discovery process."

*Id.* at *14.

Other cases cited by the government similarly support a broader stay. *See, e.g., U.S. v. Any and All Assets of That Certain Business Known as Shane Co.,* 147 F.R.D. 99, 102 (M.D.N.C. 1992) (staying all discovery); *U.S. v. Cadillac Coup,* 41 F.R.D. 352, 355 (S.D.N.Y. 1966) (noting stay of all discovery appropriate). In the event the Court should grant the government's motion for a stay, such a stay should at a minimum apply equally to all criminal defendants, whether they are cooperating with the government or not.

## CONCLUSION

Based on the foregoing, defendant Joseph Contorinis respectfully requests that this Court deny the Government's Motion to Intervene and Stay Discovery, or, in the alternative, if such a stay is granted, order that it apply equally to all parties who are defendants in parallel criminal proceedings.

Dated: July 9, 2009
      New York, New York

                        Respectfully submitted,

                        By: _/s/ Roberto Finzi_
                        Roberto Finzi (rfinzi@paulweiss.com)
                        Jaren E. Janghorbani (jjanghorbani@paulweiss.com)
                        Liad Levinson (llevinson@paulweiss.com)
                        PAUL, WEISS, RIFKIND, WHARTON &
                          GARRISON LLP
                        1285 Avenue of the Americas
                        New York, New York 10019-6064
                        T: 212-373-3000
                        F: 212-757-3990