UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

      v.

NICOS ACHILLEAS STEPHANOU,
RAMESH CHAKRAPANI, ACHILLEAS
STEPHANOU, GEORGE PAPARRIZOS,
a/k/a GEORGIOS PAPARRIZOS,
KONSTANTINOS PAPARRIZOS,
MICHAEL G. KOULOUROUDIS, and
JOSEPH CONTORINIS,

              Defendants.

**Civil Action No. 09-1043 (RJS)**

---

## DEFENDANT JOSEPH CONTORINIS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE SECURITIES AND EXCHANGE COMMISSION AND THE UNITED STATES ATTORNEY'S OFFICE

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
T: 212-373-3000

Attorneys for Defendant
Joseph Contorinis

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY ......................................................................................3

ARGUMENT.........................................................................................................4

    A.    The Law Enforcement Privilege Does Not Apply To the Facts of This Case and the Government Should Be Required to Produce the Requested Documents ...................................................................4

            1.    The Law Enforcement Privilege is a Qualified Privilege and May Be Overcome By A Sufficient Showing Of Need...........4

            2.    The U.S.A.O. and the S.E.C. Have Failed to Meet Their Threshold Burden Regarding Applicability of the Law Enforcement Privilege ...................................................5

            3.    A Balance of the Frankenhauser Factors Clearly Favor Production in This Action................................................8

    B.    The Materials Are Not Subject to Work Product Protection and Are Therefore Discoverable ..................................................14

    C.    The Materials are Relevant and Likely to Lead to the Discovery of Admissible Evidence ........................................................16

    D.    The U.S.A.O.'s Denial of a Touhy Request is Subject to Review Under the Federal Rules of Civil Procedure 26(b)(2) and 45(c)(3), Not APA § 706 ........................................................17

CONCLUSION.....................................................................................................19

Defendant Joseph Contorinis respectfully submits this memorandum of law in support of his Motion to Compel the production of documents from the Securities and Exchange Commission ("S.E.C.") and the United States Attorney's Office for the Southern District of New York ("U.S.A.O.") (together, "the government").

## PRELIMINARY STATEMENT

In February of this year Joseph Contorinis was charged in a criminal complaint and sued by the S.E.C. in the above-captioned action.  The decision on when and where to file this civil action was made by the S.E.C., presumably in consultation with the United States Attorney's Office, and clearly in coordination with the announcement of a criminal complaint filed by the U.S.A.O.  Indeed, the press releases issued by both the S.E.C. and the U.S.A.O. refer to the cooperation each received from the other.

Thereafter, the U.S.A.O. moved for a limited stay of discovery in this case.  Specifically, the U.S.A.O. asked for a stay of any discovery with respect to Nicos Stephanou, who is presumably the only witness in either case who will testify that Mr. Contorinis acted with intent to defraud or deceive.  Your Honor denied the U.S.A.O.'s motion after briefing and argument.

Now, in a continuing effort to shield Mr. Stephanou from fundamental discovery that goes to the heart of the S.E.C.'s case, the government seeks to effectively relitigate the motion for a stay by arguing that materials containing statements made by Mr. Stephanou to the government in post-arrest proffer sessions are subject to the law enforcement and work product privileges.  Notably, the government makes no effort to distinguish between statements that relate to truly "ongoing" investigations (assuming

any exist), and those that relate to matters at issue in this case, the investigation of which – at least with respect to Mr. Contorinis and others charged criminally -- is no longer "ongoing" in any real sense.

More generally – and apart from the obvious overbreadth of the government's claims of privilege – the government's claims fail even when applied to Mr. Stephanou's statements taken as a whole. While the government now claims that disclosure of the documents would compromise an ongoing investigation, its actions in bringing both the criminal and civil cases suggest otherwise. In charging Mr. Contorinis and others in criminal and civil actions based on Mr. Stephanou's word, the government clearly understood that Mr. Stephanou's prior statements to law enforcement would have to be produced in discovery, or, at a minimum, as 18 U.S.C. § 3500 material in the criminal case. Despite that understanding, the government apparently decided that the need to prosecute Mr. Contorinis and others outweighed the need for the secrecy they now urge. (Indeed, the government came within days of having to produce Mr. Stephanou's 3500 material in the Koulouroudis trial, and as recently as last month the S.E.C. was apparently negotiating the release of this material to Mr. Chakrapani under a protective order). They should not be allowed to second-guess that decision now.

The government's claim of privilege is, accordingly, both overbroad and improperly selective. It is overbroad because it makes no effort to distinguish between statements that are clearly not part of any continuing investigation (like statements about Mr. Contorinis' alleged trading), and statements that might well be relevant to truly ongoing investigations. And it is selective because, while the government now claims great risk to ongoing investigations, it was (and is) clearly prepared to produce these

statements as 3500 material in the context of a criminal trial. This suggests that the prejudice to ongoing investigations may not be as great as the government claims, and that the desire to withhold this material is more a matter of tactical advantage than of truly protecting an ongoing investigation.

For all of these reasons, set forth below and in all prior submissions in this action, Mr. Contorinis respectfully asks this Court to grant his Motion to Compel and order the government to produce the requested documents. In the alternative, Mr. Contorinis asks that the government be ordered to produce those materials subject to conditions that protect a true government interest while providing Mr. Contorinis the discovery he is entitled to by law.

## PROCEDURAL HISTORY

In September 2009, Mr. Chakrapani sought permission to file a motion to compel both the S.E.C. and D.O.J. to produce documents relating to Mr. Stephanou's statements to the government regarding the allegations in this action. (Letter from Chakrapani, S.E.C., & U.S.A.O. to the Court (Sept. 14, 2009) (hereinafter "Joint Letter") at 1, 8.) At the hearing on this issue, Mr. Contorinis joined in Mr. Chakrapani's motion to compel. (Sept. 24, 2009 Conf. Tr. at 4.) This Court held a conference on November 18, 2009 to address, *inter alia*, this ongoing discovery dispute. In light of the U.S.A.O.'s position that Mr. Contorinis had not properly joined issue with respect to the request for Mr. Stephanou's statements, the court lifted the discovery stay in order to allow Mr. Contorinis to comply with *Touhy* procedures and serve the U.S.A.O. with a subpoena

for documents.  (Nov. 18, 2009 Conf. Tr. at 40.)[1]  Mr. Contorinis did so on November 24,

2009 (Letter from Elizabeth Eaton to Sarah Light (Nov. 23, 2009), Finzi Decl. Ex. B;

Contorinis subpoena to the U.S.A.O. (Nov. 23, 2009), Finzi Dec. Ex. C.), and the

U.S.A.O. again refused production.   (Letter from Sarah E. Light to Elizabeth Eaton and

Roberto Finzi (Dec. 2, 2009) at 2, 5 ("Light Letter"), Finzi Decl. Ex. D.)

## ARGUMENT

**A.     The Law Enforcement Privilege Does Not Apply To the Facts of This Case and the Government Should Be Required to Produce the Requested Documents**

The law enforcement privilege is inapplicable to the facts of this case, and

does not permit the government to withhold discovery material that is essential to

Mr. Contorinis' defense of the S.E.C.'s allegations.

**1.     The Law Enforcement Privilege is a _Qualified_ Privilege and May Be Overcome By A Sufficient Showing Of Need**

The law enforcement privilege is a qualified privilege designed "to

prevent disclosure of law enforcement techniques and procedures, to preserve the

confidentiality of sources, to protect witnesses and law enforcement personnel, to

safeguard the privacy of individuals involved in an investigation, and otherwise to

prevent interference with an investigation." _In re Dep't of Investigation of City of_

_New York_, 856 F.2d 481, 484 (2d Cir. 1988).  The party asserting the privilege – in this

case the government – must as a threshold matter demonstrate that there are specific

harms that will result from the disclosure of the materials, and in so doing, provide more

---

[1]     Mr. Contorinis had already requested the materials from the S.E.C. in his first requests for documents.  _See_ Contorinis' First Request for Production of Documents dated June 15, 2009 at 5-6, attached hereto Exhibit A to the Declaration of Roberto Finzi (hereinafter "Finzi Decl.").

than "mere conclusory or ipse dixit assertions." *MacNamara v. City of New York*, 249

F.R.D. 70, 85 (S.D.N.Y. 2008) (citing cases); *see also King v. Conde*, 121 F.R.D. 180,

189 (E.D.N.Y. 1988).  Even where the privilege is properly asserted, a litigant may, upon

a sufficient showing of need, obtain the information which would otherwise be protected.

*S.E.C. v. Thrasher*, 92 Civ. 6987 (JFK), 1995 WL 46681, at *10 (S.D.N.Y. Feb. 7, 1995)

(noting that the law enforcement privilege "offers only a qualified protection to the

agency, and thus can be overcome by a showing on the part of the requesting party that

his need for the information outweighs the purported harm cited by the agency.").  Where

the harm alleged can be addressed by redactions or a protective order, the court should

employ those remedies, rather than withholding the documents in their entirety.

*MacNamara*, 249 F.R.D. at 79 (in balancing the interests, "[t]he court must also consider

the value of appropriate protective orders and redactions") (internal quotation marks

omitted); *King*, 121 F.R.D. 180, 190 (noting that a protective order "can mitigate many if

not all of the oft-alleged injuries to the police and to law enforcement").

### 2.    The U.S.A.O. and the S.E.C. Have Failed to Meet Their Threshold Burden Regarding Applicability of the Law Enforcement Privilege

The U.S.A.O. and S.E.C. have submitted ex-parte affidavits which may

detail more specific harms that would result from the disclosure of the requested

information; however, based on the government's earlier correspondence, publicly filed

affidavits describing the perceived harms, and its prior actions in this case,

Mr. Contorinis submits that the government has failed to meet its threshold burden.

The U.S.A.O. has primarily relied on four generic arguments as to why the

defendants are not entitled to this information: that the documents would reveal

identifying information about individuals under investigation; that the disclosure of the

5

materials would permit those individuals to alter their behavior or testimony to impede the D.O.J.'s investigation; that the targeted individuals could also flee, conceal evidence or assets, or otherwise thwart investigative efforts; and that the documents would identify government cooperators, who might then be harassed or physically assaulted. (Light Letter at 2-4; Joint Letter at 10-11; Declaration of Boyd M. Johnson III, dated Oct. 7, 2009, ¶¶ 21-23; Declaration of Peter Grupe, dated Oct. 7, 2009, ¶¶ 16-20.)

The S.E.C. has similarly failed to articulate any specific harms, merely stating that "[t]he law enforcement privilege is being asserted because providing such information to Chakrapani could interfere with ongoing law enforcement investigations." (Declaration of Elizabeth M. Murphy, dated Oct. 5, 2009, ¶ 4.) In the Joint Letter to the Court, the S.E.C. alleged that ongoing investigations could be compromised because disclosure of the materials might reveal information about individuals and transactions about which the S.E.C. is gathering information, but has not yet acted. (Joint Letter at 17.)

As a general matter, similar assertions were considered and rejected by the Court in the context of the denial of the government's motion for a stay of discovery, which was rooted in many of the same arguments that are advanced here. At the July 29, 2009 conference discussing the U.S.A.O.'s motion for a stay, for example, the government maintained that permitting discovery in this case would result in a "windfall" to the criminal defendants, who would receive documents they would otherwise not be entitled to under the Federal Rules of Criminal Procedure. (July 29, 2009 Conf. Tr. at 26.) However, as this Court noted, all Mr. Contorinis would be receiving in discovery is that to which he, as a civil litigant, is entitled. (*Id.*) When the government decides to

pursue coordinated civil and criminal actions, it cannot be heard to complain when a civil litigant requests the most basic discovery to which he is entitled under F.R.C.P. Rule 26.

The Court also found unconvincing the government's argument that the disclosure of Mr. Stephanou's testimony would permit criminal defendants to manufacture evidence or otherwise tailor their testimony. Not only is this argument guilt assuming, but, as the Court noted, "to the extent that is a real risk, it exists independent of the civil case, early disclosure of 3500 being just one example. So, again I don't think that that carries a whole lot of weight either." (*Id.* at 27.)

With respect to the argument that there is an on-going investigation, that alone cannot be grounds for withholding the information. That the S.E.C. and U.S.A.O. charging decisions in this case were made in the context of an ongoing investigation does not distinguish them from decisions routinely made by prosecutors and regulators. The government routinely charges individuals before an entire investigation is complete, and does so knowing that discovery may have to be made. As in all of those cases, the government here presumably determined that the need to charge Mr. Contorinis outweighed the risk of disclosure of aspects of an ongoing investigation. Further, and as stated above, any concern for the secrecy of the on-going investigation could be addressed through a protective order.

Finally, the government's argument that targets of their investigation could flee, conceal assets, or alter their behavior is particularly weak in this case because Mr. Stephanou's cooperation is already well known. Possible subjects of ongoing investigations who may have had contact with Mr. Stephanou are already aware that he is cooperating, and presumably would have already altered their behavior accordingly.

With respect to defendants who have already been named – either in this action or in criminal cases – they clearly are already aware of the charges they are facing, and have made no effort to flee or conceal assets.  To the extent the government's concern relates to other uncharged individuals, the marginal incremental risk posed by disclosure of certain details of his cooperation (as opposed to the already-known fact that he is cooperating) can be addressed by redactions or by a protective order.

In short, the alleged "harms" caused by disclosure that have been cited by the government are not sufficiently present here to support an invocation of the law enforcement privilege.  In this particular case – in which the identity of the main cooperating witness is already well known and the persons involved in the conduct closest to that cooperator have already been named in criminal or civil charges – we do not believe that the government can point to any incremental harm that would warrant non-disclosure, and certainly cannot point to any harm that cannot be addressed by a redaction or a protective order.

### 3.   A Balance of the *Frankenhauser* Factors <u>Clearly Favor Production in This Action</u>

To the extent this Court concludes that the government has met its burden of articulating a valid law enforcement privilege, the Court must consider whether the requesting party has a demonstrated need to receive the material protected by the privilege that outweighs the government's interest in non-disclosure.  In analyzing the issue, courts generally consider ten factors (the "*Frankenhauser* Factors"):

> (1) the extent to which disclosure will thwart the governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs [sic] suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*United States v. Painting Known as "Le Marche"*, 06 Civ. 12994 (RJS) (KNF), 2008 WL 2600659, at *2 (S.D.N.Y. June 25, 2008) (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).  Applying these factors to this case, we respectfully submit that the third, seventh and eighth factors are not relevant, and a balancing of all of the remaining factors clearly demonstrates that Mr. Contorinis' need for the requested material outweighs that of the government in maintaining its confidentiality.

### a.   There is no danger of a chilling effect

Disclosure of the information in this instance would not have the potential for chilling the disclosure of similar information from citizens in the future. Mr. Stephanou is not a whistleblower.  He is, rather, a cooperating witness who decided to cooperate with the government in the hopes of receiving a reduced sentence.  His true motives and intentions have not been tested in any court or by any jury.  Regardless, the agreement he signed with the government specifically refers to the fact that he will need to testify in open court, and therefore that his cooperation would become known to others.  Disclosure in this case cannot be said to create any concern for chilling disclosure from other citizens and does not support the government's assertion of privilege.  *See, e.g., Donato v. Fitzgibbons*, 172 F.R.D. 69, 73 (S.D.N.Y. 1996) (considering fact that witness statements were made voluntarily and that witnesses were unconcerned with the

9

statements' use a factor in favor of disclosing documents ostensibly protected by the law

enforcement privilege). This factor does not weigh against disclosure.

>   **b.      Any concern for witness privacy is outweighed
>             by Mr. Contorinis' need for the information**

Mr. Contorinis and all the parties in this action are well aware that

Mr. Stephanou is the individual accusing them of insider trading. Indeed,

Mr. Stephanou's counsel has publicly acknowledged Mr. Stephanou's cooperation on the

record of this case. Thus, there is no concern that disclosing this information would have

any impact on Mr. Stephanou. Moreover, this is not a case where there is any reason to

have concern for the witness' safety. This factor does not weigh against disclosure.

>   **c.      Mr. Contorinis seeks factual information**

The information that Mr. Contorinis seeks is entirely factual, and not

subject to a strict application of the law enforcement privilege. *Wells v. Connolly*,

07 Civ. 01390 (BSJ) (DF), 2008 WL 4443940, at *2 (S.D.N.Y. Sept. 25, 2008) (the law

enforcement privilege is weaker "with respect to withholding simple interview materials,

as contrasted with confidential law enforcement methods and tactics"). This factor

weighs in favor of disclosure.

>   **d.      Mr. Contorinis is a criminal defendant**

Although Mr. Contorinis is a criminal defendant, he is nevertheless

entitled to these documents under the Federal Rules of Civil Procedure. Simply because

the government decided to bring two actions simultaneously does not deprive him of his

right to obtain meaningful discovery. *C.f. Semon v. Stewart*, 02 Civ. 6273 (JES)

(S.D.N.Y. Sept. 30, 2003), Tr. at 27-28; *see also S.E.C.* v. *Bradstreet*, CA-95-11647-WD

(D. Mass. Oct. 16, 1995), Tr. at 12 (permitting discovery to proceed in action brought by

the S.E.C. while the D.O.J.'s criminal case was pending).  As this Court noted at the July 29, 2009 conference, there is nothing in the criminal rules that "precludes defendants who happen to have the good fortune of being in both the civil and a criminal matter to get what they are entitled to under the civil rules."  (July 29, 2009 Conf. Tr. at 26.)

Judge Rakoff's conclusions in an analogous case in which the U.S.A.O. sought to prevent the S.E.C. from producing Jencks Act material is instructive:

> The U.S. Attorney's argument [against disclosure of witness statements], therefore, boils down in the end to its standard complaint that the defendants are getting a "special advantage" because, if they were only facing a criminal indictment, they would not be entitled to these notes at this time.  But the defendants are not just facing a criminal indictment; they are also facing a very serious S.E.C. civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending such an action.

*S.E.C. v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005).  Like the defendants in *Saad*, Mr. Contorinis must defend himself in two serious cases, and is entitled to receive the discovery which the law allows.  The fact that he is a criminal defendant in one should not tip the balance regarding disclosure in the civil case in the government's favor.  To the contrary, and to the extent that the existence of the two actions is not of Mr. Contorinis' doing, this factor does not weigh against disclosure.  Finally, to the extent there is any concern about material information reaching uncharged targets beyond this action, that can again be addressed through redactions or a protective order.

     **e.**      **The investigation of Mr. Stephanou's and Mr. Contorinis' actions is complete**

Charging decisions about Mr. Contorinis have already been made, and Mr. Stephanou has settled with the S.E.C. and pled to his criminal charges.  As a result of Mr. Stephanou's cooperation, the government has spent many months investigating the allegations and has already brought a series of civil and criminal charges.  Therefore,

while the government insists that the investigation is ongoing, it has already taken at least

some definitive action pursuant to Mr. Stephanou's proffers.  Disclosure of

Mr. Stephanou's exact statements – which will in any event be turned over as 3500

material – should not impact the investigation, and this factor should not tip the scale in

the government's favor.  To the extent that the information contained in Mr. Stephanou's

proffer statements extends to unrelated persons or events, this material can be either

redacted or produced subject to a protective order.

      **f.**      **The information is not otherwise available**

The information Mr. Contorinis sought in his subpoena is not available by

any other means.  Indeed, Mr. Stephanou has refused to answer the interrogatories served

on him in this case on Fifth Amendment grounds.  (Stephanou's Response to

Chakrapani's First Set of Interrogatories dated September 1, 2009 at 2-7.)[2]

Mr. Stephanou's counsel has informed the government that he "fully anticipate[s] that

Mr. Stephanou will invoke his Fifth Amendment rights with respect to any request for

discovery that he receives" in this civil action, and that he will "continue to assert his

Fifth Amendment rights at least through the completion of the criminal trial . . . ."  (Letter

from Christopher J. Morvillo to Kingdon Kase (July 8, 2009), attached as Ex. 1 to the

S.E.C.'s Response to the D.O.J.'s Motion to Intervene dated July 9, 2009 (hereinafter

"S.E.C. Response"); S.E.C. Response at 2.)  Since Mr. Stephanou will not testify at a

deposition in this case, the only way for Mr. Contorinis to obtain this information is

through the government's documents.  *See, e.g., Thrasher*, 1995 WL 46681 at *9 ("When

a witness has previously invoked the Fifth Amendment, [the] 'hardship' requirement is

---

[2]    Mr. Stephanou has not yet responded to Mr. Contorinis' First Request for Production
of Documents, filed on August 6, 2009.

generally satisfied . . . .").  Moreover, even if Mr. Stephanou was available to give testimony, he presumably would not testify as to inconsistent statements contained in his 302s.  For this reason too, the information sought is unavailable from other sources.  This factor, therefore, cuts in favor of disclosing the materials to Mr. Contorinis.

g.      **The information sought is crucial to Mr. Contorinis' defense**

Mr. Stephanou's testimony forms the primary basis of the S.E.C.'s allegations against Mr. Contorinis, and as such, the material sought is imperative to the development of Mr. Contorinis' case.  Mr. Contorinis cannot begin to develop his defense unless and until he learns the specific allegations that Mr. Stephanou has made about him and any co-defendants.  Without this information, Mr. Contorinis will not be able to conduct the investigation he needs to develop the factual record necessary to challenge Mr. Stephanou's specific recollections and credibility.  Indeed, the S.E.C. itself has recognized how important it is for Mr. Contorinis to obtain this evidence.  In its July 17, 2009 letter to the Court, the S.E.C. stated: "*the Commission recognizes that [Stephanou's] plan to assert his Fifth Amendment privilege in the near term is relevant because the defendants must have the opportunity to obtain meaningful discovery from Nicos at some point before the trial of this matter.*" (Letter from Kingdon Kase to Court (July 17, 2009) at 1 (emphasis added).)  In light of this concession, the government cannot credibly argue that the disputed documents are not relevant to Mr. Contorinis.  As a result, this too underscores the need to provide the materials to Mr. Contorinis, and undermines the government's claim of privilege.

*      *      *      *

This is not a case in which a criminal defendant brings a civil action for the purpose of seeking access to details of an ongoing investigation.  This action was

13

brought against Mr. Contorinis, and the material he is seeking is material that he would in any event be entitled to under both the Federal Rules of Civil Procedure and the Jencks Act. It is therefore not surprising that balancing each of the aforementioned factors clearly establishes that Mr. Contorinis has a demonstrated need for the information which outweighs the government's stated interest in its temporary confidentiality. The law enforcement privilege should not provide a basis for denying Mr. Contorinis access to the requested discovery, and to the extent that it does, these concerns can be addressed through redactions or a protective order.

**B.      The Materials Are Not Subject to Work Product Protection and Are Therefore Discoverable**

Like the law enforcement privilege, the work product doctrine provides only qualified protection to materials developed in the anticipation of litigation. Pursuant to Federal Rule of Civil Procedure 26(b)(3) the court may require the production of work product if the requesting party "has [a] substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means."

As described above and in Mr. Chakrapani's joint submission, Mr. Contorinis has a substantial need for the information Mr. Stephanou provided the government and the work product doctrine should not prevent its disclosure. To the extent the material is protected work product, Mr. Contorinis is only seeking the "fact work product," specifically summaries or transcripts of Mr. Stephanou's testimony, which is regularly subject to production under Rule 26(b)(3). *See In re John Doe Corp.*, 675 F.2d 482, 492-93 (2d Cir. 1982); *Thrasher*, 1995 WL 46681, at *6 ("[T]o the extent that the notes constitute summaries of what a party or witness has stated to the attorney or

14

his representative, it is treated as factual work product and analyzed under the standards articulated in Rule 26(b)(3).").  To the extent that the statements contain information about other individuals that the government is investigating, the government should not be permitted to impair Mr. Contorinis' ability to defend himself simply because the government made the calculated decision to charge some individuals while it continued to investigate others.  As discussed, *supra*, the U.S.A.O.'s desire to preserve the investigation's secrecy could be addressed through a protective order, and does not require them to withhold these relevant documents.

The court's analysis in *Thrasher* is directly on point.  In *Thrasher*, this Court noted that "[t]here is no question that the movants have a substantial need to learn what the identified witnesses have told the Commission and would state under oath about their knowledge of the movants' role in the transmission and receipt of insider information."  1995 WL 46681, at *8.  Mr. Contorinis cannot possibly be expected to prepare a defense without knowing what his accuser alleges.  And, this is all the more important in a case which will largely turn on the credibility of Mr. Contorinis' sole accuser.

Mr. Contorinis has also demonstrated the requisite hardship to overcome the government's work product assertion.  Mr. Contorinis cannot obtain the information from Mr. Stephanou himself because Mr. Stephanou has chosen to invoke his Fifth Amendment rights with respect to this litigation, and there is no other possible source for a single cooperating witness's testimony.  *Thrasher*, 1995 WL 46681, at *9 ("When a witness has previously invoked the Fifth Amendment, that 'hardship' requirement is generally satisfied . . . ."); *United States v. Davis*, 131 F.R.D. 391, 396 (S.D.N.Y. 1990),

*reh'g granted on other grounds*, 131 F.R.D. 427 (S.D.N.Y. 1990) ("[W]here a witness gives a statement to one party but then refuses to give it to the another [sic], courts have held that, despite the invocation of the work product privilege, the party should be able to discover the statement given to the adversary."). As a result of Mr. Stephanou's assertion of the Fifth Amendment, the government is the only party with access to this information. Mr. Contorinis has therefore met his burden of demonstrating a substantial hardship that can only be remedied by the government's production of these materials.

Finally, ordering the government to do so would not be "unduly burdensome," as the U.S.A.O. claims. (Light Letter at 4-5.) In *Borchers*, the case the U.S.A.O. relies upon in support of its position, no one was pleading the Fifth Amendment, and plaintiff had other means of obtaining the information. *Borchers* v. *Comm'l Union Assurance Co.*, 874 F. Supp. 78, 80 (S.D.N.Y. 1995). Accordingly, Mr. Contorinis respectfully requests this Court to order the immediate production of the materials regarding Mr. Stephanou's statements to the government that Mr. Contorinis requested in his Document Requests and Subpoena.

**C.     The Materials are Relevant and Likely to Lead to the Discovery of Admissible Evidence**

The U.S.A.O. has refused to provide Mr. Stephanou's proffer agreement, a letter concerning the proffer agreement, and recorded conversations between Mr. Stephanou and co-defendants on the basis that this material is "not likely to lead to the discovery of admissible evidence." (Light Letter at 4.) This objection is frivolous. The manner in which Mr. Stephanou interacted with other people, particularly alleged co-defendants in this case, is plainly relevant to Mr. Contorinis' defense. Not only are the documents and recordings themselves relevant and admissible, they are clearly likely to

16

lead to the discovery of additional relevant and admissible evidence.  The materials thus

fall squarely within the scope of Federal Rule of Civil Procedure 26 and the government

should be required to produce them.

**D.     The U.S.A.O.'s Denial of a *Touhy* Request is Subject to Review Under the Federal Rules of Civil Procedure 26(b)(2) and 45(c)(3), Not APA § 706**

The U.S.A.O. has suggested that the Court has little discretion in

overseeing a discovery dispute arising out of the denial of a *Touhy* request, and argues

that its decision to deny Mr. Contorinis the requested material is subject only to an

arbitrary and capricious standard of review.  (Joint Letter at 11.).  In support of this

proposition the U.S.A.O relied on *U.S. Envtl. Prot. Agency* v. *Gen. Elec. Co.*, 197 F.3d

592, 597 (2d Cir. 1999), but on rehearing, the Second Circuit held that it had not

determined the correct standard of review and "a plausible argument can be made in

support of the idea that Section 706 of the APA is not necessarily the appropriate

standard of review."  *U.S. Envtl. Prot. Agency* v. *General Elec. Co.*, 212 F.3d 689, 690

(2d Cir. 2000); *see also Johnson* v. *Bryco Arms*, 226 F.R.D. 441, 445 (E.D.N.Y. 2005)

(recognizing that the Second Circuit has not yet determined the standard of review); *In re

PE Corp. Secs. Litig.*, 3:00 CV 705 CFD TPS, 2005 WL 806719, at *6 (D. Conn. Apr. 8,

2005) (same).

Indeed, Circuits have differed on whether an agency's decision is

reviewed under Federal Rules of Civil Procedure 26(b)(2) and 45(c)(3), which require the

government to show an undue burden to avoid producing the requested material, or APA

§ 706, which applies an arbitrary and capricious standard of review.  In its most recent

decision discussing the issue, the Second Circuit commented that "the question of

whether APA § 706 governs courts' review of agency non-compliance with discovery

requests [is] . . . far from settled." *In re S.E.C. ex rel Glotzer*, 374 F.3d 184, 191 (2d Cir. 2004). Although the court declined to rule on the issue in that case, it recognized that "some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas." *Id.* (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994); *Linder* v. *Calero-Portocarrero*, 251 F.3d 178, 180-81 (D.C. Cir. 2001)).

Irrespective of which standard is applied, the government's decision to withhold the subpoenaed material in this case is improper. In light of the relatively small amount of material; the fact that the U.S.A.O. was prepared to release the information in the recently scheduled Koulouroudis trial; and the fact that the U.S.A.O. will in any event have to produce the documents as 3500 material in Mr. Contorinis' trial, the U.S.A.O. cannot reasonably argue that being forced to produce the materials constitutes an undue burden. And, when considered against the government's apparent willingness to provide the material to some defendants, but not others, the decision even arises to the level of arbitrary and capricious. Producing Mr. Stephanou's statements is a minimal burden that the government can sustain.

## CONCLUSION

For the foregoing reasons, Mr. Contorinis' Motion to Compel the production of documents from the S.E.C. and U.S.A.O. should be granted in its entirety.  In the alternative, the Court should direct that the U.S.A.O. and S.E.C. produce those portions of the requested materials that do not relate to an ongoing investigation.

Dated:   December 4, 2009
         New York, New York

Respectfully submitted,

By: _Roberto Finzi /MG_____

Mark Pomerantz
Theodore J. Wells
Roberto Finzi
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000
F:  212-757-3990

Attorneys for Defendant
Joseph Contorinis