UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| Plaintiff, : | |
| v. : | Civil Action No. |
| : | 09-cv-01043 (RJS) |
| NICOS ACHILLEAS STEPHANOU, et al., : | ECF CASE |
| Defendants. : | |

SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN OPPOSTION TO DEFENDANT
JOSEPH CONTORINIS' MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS FROM THE SECURITIES AND EXCHANGE COMMISSION
AND THE UNITED STATES ATTORNEY'S OFFICE

G. Jeffrey Boujoukos
Kingdon Kase
Catherine E. Pappas
Attorneys for plaintiff
SECURITIES AND EXCHANGE COMMISSION
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA 19106
(215) 597-3100

**TABLE OF CONTENTS**

**PAGE**

I. BACKGROUND ...................................................................................................1

II. DISCUSSION ........................................................................................................4

    A. The Work Product Doctrine Protects the Stephanou Documents ................4

        1. The Stephanou Documents Were Prepared in Contemplation of Litigation or For Trial .............................................................................5

        2. Contorinis Has Not Met the Heavy Burden Necessary to Overcome the Work Product Privilege............................................................................6

        3. This Case is Distinguishable From Those Cited by Contorinis Because Stephanou is Only Temporarily Unavailable..........................................8

    B. The Law Enforcement Privilege Protects the Stephanou Documents .........9

        1. The Commission Has Demonstrated That the Stephanou Documents are Protected by the Law Enforcement Privilege .................................10

        2. Contorinis Has Not Demonstrated the Substantial Need Necessary to Overcome the Commission's Law Enforcement Privilege...................10

            a. The Stephanou Documents Are Not Merely Factual, They Reflect the Mental Impressions, Conclusions, Opinions and Legal Theories of the Commission's Staff (Factor 4) ............11

            b. Contorinis is a Criminal Defendant, and Will Be Provided With Information Regarding the Stephanou Proffer Sessions Pursuant to 18 U.S.C. § 3500 (Factors 5 and 9) .....................12

            c. The Commission has an Ongoing Investigation (Factor 6) ....12

III. CONCLUSION.....................................................................................................13

The plaintiff, United States Securities and Exchange Commission ("Commission"), respectfully submits this memorandum of law in opposition to the motion ("Motion") of defendant Joseph Contorinis ("Contorinis") to compel the Commission and the United States Attorney's Office ("USAO") to produce documents regarding their interviews with Nicos Stephanou ("Stephanou"). The Court should deny Contorinis' Motion because the documents he seeks are protected from disclosure by both the work product and law enforcement privileges, as more fully discussed below and in the Declaration of Commission Secretary Elizabeth M. Murphy, filed October 6, 2009 ("Secretary's Declaration"), and the confidential materials submitted to the Court on October 6, 2009, for its *in camera* review ("*in camera* submission") (both the Secretary's Declaration and the *in camera* submission are incorporated herein by reference).

## I.   BACKGROUND

The action against Contorinis and the other defendants in this matter arises out of an ongoing, wide ranging, and nonpublic Commission insider trading investigation in connection with certain suspicious trading ahead of a number of mergers and acquisitions including Albertson's ("ABS"), ElkCorp ("ELK"), and National Health Investors, Inc. ("NHI"), among others. The USAO is conducting a parallel criminal investigation.

On January 12, 2009, the Commission filed a related civil action before the Court ("Related Action") charging defendant Ramesh Chakrapani with tipping a friend and fellow industry professional with material nonpublic information regarding the acquisition of ABS, causing his tippees to generate a total of approximately $3.6 million in illegal profits by trading ahead of the ABS acquisition announcement. On February 5, 2009, the Commission filed this civil injunctive action (the "Action") against seven individuals, including Contorinis, for their

involvement in an insider trading ring that generated more than $11.6 million in illegal profits and avoided losses from trading in the securities of ABS, ELK, and NHI (this Action and the Related Action, collectively, the "Pending Actions").[1]  The Commission's investigation into trading in connection with these and other deals is continuing, and it is possible that the Commission may ultimately take action against additional defendants in connection with trading in the securities of ABS, ELK, NHI and/or other publicly held companies.

In connection with the Pending Actions and the Commission's ongoing investigation, various members of the Commission staff attended, or participated in by phone, a total of five proffer sessions that the USAO conducted with Stephanou between January 16, 2009, and April 17, 2009 ("Stephanou Proffer Sessions").  All of the Stephanou Proffer Sessions took place after the filing of the Related Action, and all but one of those sessions took place after the filing of this Action.  No contemporaneous notes were taken by the Commission staff attending any of the Stephanou Proffer Sessions, nor does the staff possess any notes or transcriptions of those proffer sessions prepared by or on behalf of any representative of the USAO or any other agency.

On June 15, 2009, Contorinis served the Commission with his First Request for Production of Documents and First Interrogatories in this Action.  Those requests included requests to produce documents and information regarding, among other things, the Stephanou Proffer Sessions.  On July 15, 2009, the Commission filed its response to those discovery requests in which it objected to producing documents or information protected from disclosure by, among other things, the work product doctrine and the law enforcement privilege.  Those objections were lodged generally, and were again specifically referenced, as applicable, in response to individual requests for production and interrogatories.  Where applicable, the Commission also specifically noted that "to the extent that this request is sufficiently broad to

---

[1]    Contorinis is only charged with illegal trading in connection with the ABS transaction.

2

include any on-going governmental investigation, the Commission also objects based on the federal law enforcement privilege." That same date, the Commission also provided Contorinis with a Privilege Log setting forth six categories of documents as to which the Commission is asserting one or more privileges, including: Category 1:  Staff's legal and factual analyses, and notes and internal communications related thereto; and Category 2:  Electronic mail internal to the staff and the Commission.  As to both of those categories (which encompass the documents now sought by Contorinis), the Commission expressly asserted that the subject documents were withheld based on the work product doctrine and law enforcement privilege, among other things.  At the time, the Commission did not individually log each item withheld on the grounds of undue burden and expense.  On August 21, 2009, the Commission served supplemental discovery responses, in which it reiterated the objections set forth in its earlier discovery responses.

The Commission possesses a limited number of internal emails (fewer than five) that were prepared by staff members who personally attended or participated in the Stephanou Proffer Sessions (or who authored emails that relayed information from those staff members), and that include information concerning what transpired during those proffer sessions ("Stephanou Documents").  On September 11, 2009, the Commission provided Contorinis with a particularized privilege log providing pertinent identifying information regarding the Stephanou Documents, and citing the privilege(s) applicable to each.

On October 6, 2009, the Commission provided further support for the application of the law enforcement and work product privileges to the Stephanou Documents by filing the Secretary's Declaration and providing the Court with the Commission's *in camera* submission.

3

## II. DISCUSSION

### A. The Work Product Doctrine Protects the Stephanou Documents.

The Stephanou Documents are protected from disclosure by the work product doctrine, which is embodied in Federal Rule of Civil Procedure 26(b)(3) and protects from discovery, among other things, documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." That rule "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 ($2^d$ Cir. 1998). Witness interview notes prepared in anticipation of litigation are accorded a strong work product protection. See Upjohn Co. v. United States, 449 U.S. 383, 440 (1981) ("It is clear that this is the sort of material that the draftsmen of the Rule had in mind as deserving special protection"); Hickman v. Taylor, 329 U.S. 495, 510 (1947) (production of such witness statements "contravenes the public policy underlying the orderly prosecution and defense of legal claims").

The plain language of Rule 26(b)(3) clearly protects both documents prepared for trial and those prepared in anticipation of litigation. Moreover, courts have routinely recognized that the work-product protection extends to witness interview notes taken in the course of Commission investigations. See SEC v. Cavanagh, 1998 WL 132842 (S.D.N.Y. 1998) (granting protective order, finding notes of witness interviews protected by the work product privilege); SEC v. Downe, 1994 WL 23141 (S.D.N.Y. 1994) (denying motion to compel production of notes of witness interviews); SEC v. Navarre,

1993 WL 267295 (S.D.N.Y. 1993) (granting protective order to prevent disclosure of notes of witness interviews).[2]

### 1. The Stephanou Documents Were Prepared in Contemplation of Litigation or For Trial.

The Stephanou Documents were all prepared in contemplation of litigation or for trial. All of those documents were created after the filing of the Related Action, and all but one of the Stephanou Documents were prepared after both of the Pending Actions had already been filed. As Contorinis himself acknowledges, Stephanou is one of the most important witness to these proceedings. Contorinis' Memorandum of Law in Support of the Motion ("Contorinis Brief"), p. 13. Plainly, the staff attended the Stephanou Proffer Sessions and prepared the Stephanou Documents in anticipation of the trial of the Pending Actions. Moreover, as mentioned above, the Commission's investigation is ongoing and may eventually result in Commission action against additional defendants in connection with trading in the securities of ABS, ELK, NHI and/or other publicly held companies. As such, the Stephanou Documents were also prepared in connection with an ongoing investigation that may result in further litigation. Furthermore, the documents in question reflect the mental impressions, conclusions, opinions and legal theories the staff of the Commission was developing in connection with both the Pending Actions and its

---

[2] The work product privilege is not limited to documents, but extends to "all trial preparation activities and all communications made principally for the purpose of preparing for litigation or trial." In re Terrorist Attacks on September 11, 2001, 2008 U.S. Dist. LEXIS 45751, *17-18 (S.D.N.Y. 2008) (citing In re Gulf Oil/Cities Serv. Tender Offer Litig., 1990 U.S. Dist. LEXIS 9082 (S.D.N.Y. 1990) (citation omitted) (denying on work product grounds plaintiffs' request to question witness about the content of communications between him and an attorney representing former parent company of witness's former employer); see also Morales v. United States, 1997 U.S. Dist. LEXIS 6035 (S.D.N.Y. 1997) (denying motion to compel because deposition questions concerning attorney's communications with non-party witness may reveal legal strategy); In re Sealed Case, 856 F.2d 268, 319 (D.C. Cir. 1988) (holding district court properly denied motion to compel deposition answers from Commission staff involving their recollection of witness interviews conducted during the investigation).

ongoing investigation. As such, the Stephanou Documents and information related to those documents are eligible for work product protection. See United States v. Adlman, 134 F.3d at 1204 (holding that mental impressions, conclusions, opinions or legal theories of an attorney or other representative are "within the most protected category of work product").

### 2. Contorinis Has Not Met the Heavy Burden Necessary to Overcome the Work Product Privilege.

Rule 26(b)(3) provides a qualified privilege from production. However, in order to overcome the work product privilege, the rule requires that the party seeking discovery must demonstrate both substantial need for the materials in the preparation of his case *and* that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In the specific case of attorney interview notes, the rule places a heavy burden on the party seeking to overcome the privilege. See Hickman, 329 U.S. at 512 ("the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify the production"); Upjohn, 449 U.S. at 401 (attorney notes and memoranda of witnesses' oral statements protected by work product privilege) ("To the extent that [the notes] do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications. As Rule 26 and Hickman make clear, such work-product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.").

Furthermore, in cases such as this, where the requested documents contain mental impressions, conclusions, opinions or legal theories of an attorney, the party seeking to overcome work product protection bears an especially high burden in demonstrating substantial need and unavailability.  See United States v. Adlman, 134 F.3d at 1204 (holding that, at a minimum, mental impressions, conclusions, opinions or legal theories of an attorney or other representative are to be protected "unless a highly persuasive showing is made"); Tribune Co. v. Purcigliotti, 1997 U.S. Dist LEXIS 228, *20 (S.D.N.Y. 1997) ("The standard for production is more stringent when the material sought reflects the opinions, thought process or strategy of an attorney, because such material is deserving of the highest protection."); see also Hickman, 329 U.S. at 510 ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.").

It must be noted that the Stephanou Documents are not statements written or reviewed by Stephanou, or even a verbatim transcription of his statements – they are simply emails written by staff members who attended or participated in the Stephanou Proffer Sessions (or who authored emails relaying information from such staff members) relating to those sessions, and contain their mental impressions, conclusions, opinions and legal theories with regard to the current litigation as well as any potential future litigation.  Moreover, the Stephanou Documents were not created contemporaneously during the Stephanou Proffer Sessions, but were written afterwards.

### 3. This Case is Distinguishable From Those Cited by Contorinis Because Stephanou is Only Temporarily Unavailable.

Obviously, the most definitive source for the information imparted during the Stephanou Proffer Sessions is Stephanou himself.  The Commission acknowledges that counsel for Mr. Stephanou has indicated that Mr. Stephanou, who has entered into a plea agreement with the USAO in a related criminal action, will assert his Fifth Amendment rights, at least until Contorinis' criminal trial is resolved.  Nevertheless, Contorinis cannot demonstrate a substantial need to obtain the Stephanou Documents at this time because, as Contorinis himself concedes, Stephanou's exact statements "will in any event be turned over as 3500 material" in connection with the USAO's criminal action against him.  Contorinis Brief, p. 12.  Moreover, although Stephanou himself may temporarily be unavailable, it is highly likely that he will be available to be deposed once he has fulfilled his testimonial obligations in connection with the Contorinis criminal action.

As such, this case is clearly distinguishable from the cases cited by Contorinis in which a court required production of interview notes of witnesses who asserted their Fifth Amendment privilege *and were permanently, or indefinitely, unavailable.*  See SEC v. Thrasher, 1995 U.S. District LEXIS 1355, *23-25 (S.D.N.Y. February 7, 1995) (one witness deceased, whereabouts of one witness unknown, one witness defaulted in the action and a parallel private action, and departed to reside in Milan, Italy, two witnesses were unreachable, two witnesses confirmed their intention to continue to invoke Fifth Amendment privilege, and one witness presumed to continue to invoke Fifth Amendment privilege); U.S. v. Davis, 1990 U.S. Dist. LEXIS 6951, **4 (S.D.N.Y. 1990) (witness was unavailable because he "resided in Greece as a fugitive from justice"); see also, SEC v. Militano, 1991 U.S. Dist. LEXIS 17953, *3 (S.D.N.Y. 1991) ("substantial need"

shown for interview notes of witnesses who were unavailable because, although they had plea agreements in parallel criminal action, they were nevertheless permitted to continue asserting their Fifth Amendment privilege after demonstrating that they might be subject to further criminal prosecution); A.F.L. Falck v. E.A. Karay Company, Inc., 1990 U.S. Dist. LEXIS 5870, *49 (S.D.N.Y. 1990) ("substantial need" demonstrated where unavailable witness was a permanent resident of Greece and was therefore beyond reach of the court); In re Grand Jury Investigation, 599 F.2d 1224, 1232 (3d Cir. 1979) (court required production of employee questionnaire and interview memorandum relating to witness who was deceased).  Therefore, there is no compelling need at this time to defeat the Commission's work product claim, since Contorinis will receive Stephanou's statements as part of the "3500 material" he is entitled to in his criminal case, and because Stephanou himself will almost certainly be available to be deposed following Contorinis' criminal trial.[3]

### B. The Law Enforcement Privilege Protects the Stephanou Documents.

The law enforcement privilege prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation." In re Dep't of Investig. of the City of N.Y. v. Meyerson, 856 F.2d 481, 483-84 (2d Cir. 1988).  The law enforcement privilege has also

---

[3] While Stephanou's temporary unavailability substantially undermines the Commission's ability to successfully prosecute its case against Chakrapani at this time, it is not a sufficient basis for Contorinis to invade the Commission's work product and law enforcement privileges.  In addition, the Commission notes that there are significant differences between the facts and evidence relating to Contorinis, who has been indicted criminally and has asserted his Fifth Amendment privilege in answering the Commission's Complaint and discovery requests, and those relating to Chakrapani, who has not been indicted, but who is involved in the USAO's ongoing investigation.

9

been applied to information relating to Commission investigations.  See In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988).  In order to overcome the law enforcement privilege "the claimant must make a showing of necessity sufficient to outweigh the adverse effects the production would engender."  United States v. Painting Known as Le Marche, 2008 U.S. Dist. LEXIS 49171, *7 (S.D.N.Y. June 25, 2008) (*quoting* Black v. Sheraton Corp. of America, 564 F. 2d 531, 545 (D.C. Cir. 1977).

> **1.    The Commission Has Demonstrated That the Stephanou Documents are Protected by the Law Enforcement Privilege.**

The Stephanou Documents are also protected by the law enforcement privilege because, as discussed above and in the Secretary's Declaration and the Commission's *in camera* submission, the Commission staff has an ongoing investigation into trading in the securities of ABS, ELK, NHI and other publicly held companies, and it is possible that the Commission may ultimately take action against additional defendants in connection with trading in one or more of those securities.  Disclosure of the Stephanou Documents could compromise the staff's investigation by revealing information about transactions or individuals about which the staff is gathering information, but as to which the Commission has not yet taken action.  Therefore the Stephanou Documents are protected by the law enforcement privilege.

> **2.    Contorinis Has Not Demonstrated the Substantial Need Necessary to Overcome the Commission's Law Enforcement Privilege.**

Contorinis has not met his burden of demonstrating the substantial need necessary to overcome the Commission's law enforcement privilege.  Court's, typically in the context of a criminal proceeding, have considered the following ten factors (the "Frankenhauser factors") in

10

assessing whether a defendant has demonstrated the need necessary to overcome the law enforcement privilege:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

Wells v. Connolly, 2008 U.S, Dist. LEXIS 78818, *4-5 (S.D.N.Y September 25, 2008) (*quoting* Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). However, these factors are not to be mechanically applied, "the ingredients of the test will vary from case to case," and the weight to be given to particular factors must be separately determined in each case. White v. New York City Health & Hosp. Corp., 1990 U.S. Dist LEXIS 3008, *20 (S.D.N.Y. March 19, 1990) (*quoting* Frankenhauser, 59 F.R.D. at 344).

In this case, the following Fraunkenhauser factors are most pertinent, and militate against disclosure of the Stephanou Documents:

### a. The Stephanou Documents Are Not Merely Factual, They Reflect the Mental Impressions, Conclusions, Opinions and Legal Theories of the Commission's Staff (Factor 4).

As discussed above, the Stephanou Documents are not merely factual—they consist of emails sent by and among Commission staff, and reflect the staff's mental impressions, conclusion, opinions, and legal theories. In addition, the Stephanou Documents include no witness statements, transcriptions, or contemporaneous notes made during the Stephanou Proffer Sessions. Therefore, this case is unlike the Wells case relied on by Contorinis, in which

11

defendants sought access to unredacted inmate witness statements.  The Stephanou Documents contain no such witness statements.  See Wells v. Connolly, 2008 U.S. Dist. LEXIS 78818, *1 (S.D.N.Y Sept. 25, 2008).  Therefore, the fourth Frankenhauser factor weighs in the Commission's favor.

### b. Contorinis is a Criminal Defendant, and Will Be Provided With Information Regarding the Stephanou Proffer Sessions Pursuant to 18 U.S.C. § 3500 (Factors 5 and 9).

As Contorinis himself acknowledges, because he is a criminal defendant, he will ultimately be provided with information concerning the Stephanou Proffer Sessions pursuant to 18 U.S.C. § 3500.  Contorinis Brief, p. 12.  Under the circumstances, Contorinis cannot show that he has a substantial need for access to the Stephanou Documents, which were not created during the Stephanou Proffer Sessions, and which are protected by the law enforcement privilege.  Moreover, this case is easily distinguishable from the SEC v. Saad case relied on by Contorinis, because the notes at issue in that case were not those of Commission staff, but were handwritten notes made by an employee of the defendant corporation, which apparently reflected conversations he had with cooperating defendants.  SEC v. Saad, 229 F.R.D. 90, 92 (S.D.N.Y. 2005).  As such, the Commission in that case initially determined that the employee's notes should be produced, but sought guidance from the court after the USAO requested that those documents be withheld.  Id.  In any event, it is very likely that Contorinis will also be able to depose Stephanou himself once Stephanou fulfills his testimonial obligations in the criminal action.  Therefore, both the fifth and ninth Frankenhauser factors favor the Commission.

### c. The Commission has an Ongoing Investigation (Factor 6).

As discussed above, the Commission has an ongoing, wide ranging, and nonpublic Commission insider trading investigation in connection with certain suspicious trading ahead of

12

a number of mergers and acquisitions including ABS, ELK, and NHI, among others.  As set forth in the Secretary's Declaration and the Commission's *in camera* submission, disclosure of the Stephanou Documents could compromise the staff's investigation by revealing information about transactions or individuals about which the staff is gathering information, but as to which the Commission has not yet taken action.  Therefore, the sixth Frankenhauser factor also militates against invading the Commission's law enforcement privilege.

For all of the foregoing reasons, Contorinis has not met his burden of demonstrating the requisite need to overcome the Commission's law enforcement privilege.

### III.   CONCLUSION

For the reasons set forth herein, the Court should deny Contorinis' Motion to compel production of the Stephanou Documents, because they are protected from disclosure by the work product doctrine and the law enforcement privilege and, Contorinis has failed to demonstrate the requisite need for those documents.

                                          Respectfully submitted,

                                          s/Kingdon Kase

                                          G. Jeffrey Boujoukos
                                          Kingdon Kase
                                          Catherine E. Pappas
                                          Counsel for plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          Mellon Independence Center
                                          701 Market Street, Suite 2000
                                          Philadelphia, PA 19106
                                          (215) 597-3100

Date:   December 18, 2009

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of December, 2009, I caused true and correct copies of Plaintiff Securities and Exchange Commission's memorandum of law in opposition to defendant Joseph Contorinis' Motion to Compel the Production of Documents from the Securities and Exchange Commission and the United States Attorney's Office, to be served on the following individuals via the Court's ECF System:

Sarah E. Light, Esquire
Andrew L. Fish, Esquire
United States Department of Justice
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY  10007
E-mail:   andrew.fish@usdoj.gov
**(Counsel for Department of Justice)**

Michael S. Sommer, Esquire
Michael Marando Esquire
Mitchell Epner, Esquire
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas
New York, New York 10019
 **(Counsel for Ramesh Chakrapani)**

Christopher J. Morvillo, Esquire
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer
565 Fifth Avenue
New York, NY  10017
 **(Counsel for Nicos Achilleas Stephanou)**

Todd Maybrown, Esquire
Allen, Hansen & Maybrown, PS
600 University Street, Suite 3020
Seattle, Washington  98101
 **(Counsel for George Paparrizos)**

Russell T. Neufeld, Esquire
99 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (646) 613-8359
 **(Counsel for George Paparrizos)**

Roberto Finzi, Esquire
Mark Floyd Pomerantz, Esquire
Theodore Von Wells, Jr., Esquire
Liad Levinson, Esquire
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
 **(Counsel for Joseph Contorinis)**

Michael Bachner, Esq.
Bachner & Associates, PC
26 Broadway, Suite 2310
New York, NY 10004
Telephone:  (917) 388-6461
Facsimile:  (212) 344-7774
E-mail:  mb@bhlawfirm.com
**(Counsel for Michael Koulouroudis)**


s/Kingdon Kase
Kingdon Kase

Attorney for Plaintiff

SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, PA  19106
(215) 597-3100

15