UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>      - against -<br><br>RAMESH CHAKRAPANI,<br><br>         Defendant. | **ECF Case**<br>**09 Civ. 325 (RJS)** |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>      - against -<br><br>NICOS STEPHANOU,<br><br>         Defendant. | **ECF Case**<br>**09 Civ. 1043 (RJS)** |

**MEMORANDUM OF LAW OF THE UNITED STATES ATTORNEY'S OFFICE IN OPPOSITION TO THE MOTION TO COMPEL FILED BY JOSEPH CONTORINIS AND IN SUPPORT OF A RENEWED MOTION FOR A LIMITED STAY OF DISCOVERY**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel. No. (212) 637-2774
Fax. No. (212) 637-2686
Email: sarah.light@usdoj.gov

SARAH E. LIGHT
– Of Counsel –

## TABLE OF CONTENTS

PAGE

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    This Litigation and Related Criminal Prosecutions. . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.    The USAO's Prior Motion to Stay Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     C.    Contorinis's Touhy Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I–
THIS COURT SHOULD NOT DECIDE THE MOTION TO COMPEL UNTIL IT
HAS RESOLVED THE SEC'S MOTION TO DISMISS CHAKRAPANI FROM
THIS SUIT AND THE GOVERNMENT'S RENEWAL OF ITS MOTION TO
STAY DISCOVERY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.    This Court Should First Resolve the SEC's Motion to Dismiss Chakrapani. . . . . 5

POINT II–
THIS COURT SHOULD DENY THE MOTION TO COMPEL PRODUCTION OF THE
REQUESTED DOCUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.    This Court Need Not Resolve Whether the Standard of Review is Arbitrary
          and Capricious Under the APA as the Motion Should Be Denied Under
          Any Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.    The Requested Production of Documents Is Barred by
          The Law Enforcement Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          1.    The Law Enforcement Privilege Applies. . . . . . . . . . . . . . . . . . . . . . . . . 13

          2.    Contorinis Cannot Demonstrate a Need for the Privileged Information
              That Outweighs the Harm Caused By Disclosure. . . . . . . . . . . . . . . . . . 14

     C.    The Work Product Privilege Applies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Non-party the United States Attorney's Office for the Southern District of New York ("USAO") respectfully submits this memorandum of law in opposition to defendant Joseph Contorinis's motion to compel production of documents.  In addition, if the Court dismisses this action against Ramesh Chakrapani, the USAO renews its limited motion to stay document discovery regarding Nicos Stephanou's statements until such time as documents are produced in *United States v. Contorinis*, , 09 Cr. 1083 (RJS), pursuant to 18 U.S.C. § 3500, and to stay oral testimony by Stephanou until after he has testified in that case.

## BACKGROUND

### A.   This Litigation and Related Criminal Prosecutions

On or about January 13, 2009, the Securities and Exchange Commission ("SEC") filed this civil action against, among others, Ramesh Chakrapani, Joseph Contorinis, Michael Koulouroudis, and Nicos Stephanou.  With respect to Contorinis, the civil complaint alleges that Stephanou tipped Contorinis with insider information regarding the acquisition of Albertson's.

Four of the defendants in this civil case, including Contorinis, are also defendants in substantially related criminal prosecutions in this District arising from schemes to execute securities transactions based on material, nonpublic information that had been misappropriated from UBS Investment Bank.  Three of the defendants – Nicos Stephanou, George Paparrizos, and Michael Koulouroudis – have pleaded guilty to charges of conspiracy and securities fraud in the cases captioned *United States* v. *Stephanou*, 09 Cr. 467 (CM), *United States* v. *Paparrizos*, 09 Cr. 400 (PAC), and *United States* v. *Koulouroudis*, 09 Cr. 440 (PGG).[1]  On November 5,

---

[1]   Since October 7, 2009, when the Declarations of Reed Brodsky, Peter Grupe and Boyd Johnson were submitted to the Court in support of the Government's claims of law enforcement privilege, the following facts, of which this Court may take judicial notice, have changed.  On November 5, 2009, a grand jury returned an indictment against Contorinis charging him with securities fraud and conspiracy, *United States v. Contorinis*, 09 Cr. 1083 (RJS).  On November

2009, a grand jury returned an indictment against Contorinis, charging him with conspiracy and securities fraud the case captioned *United States v. Contorinis*, 09 Cr. 1083 (RJS).  The criminal investigation remains ongoing.  *See* Declaration of Boyd M. Johnson, III, dated October 7, 2009 ("Johnson Decl.") (attached to Declaration of Sarah E. Light, dated December 17, 2009 ("Light Decl.") as Exhibit 1; Declaration of Peter Grupe, dated October 7, 2009 ("Grupe Decl.") (attached to Light Decl. as Exhibit 2); *see also Ex Parte* Declaration of Reed Brodsky, dated October 7, 2009 ("Brodsky Decl.") (previously submitted *in camera* to the Court).

The SEC has now moved to dismiss the sole remaining civil defendant who is not a criminal defendant, Ramesh Chakrapani.  That motion has not yet been fully briefed.

**B.     The USAO's Prior Motion to Stay Discovery**

On or about July 2, 2009, the USAO filed a motion seeking to stay (1) all discovery (including interrogatories and deposition notices) directed at Nicos Stephanou and (2) all discovery directed at determining the investigative steps taken by DOJ (including, for example, Chakrapani's interrogatory asking the SEC to identify, among other things, all individuals interviewed by the DOJ).  The basis for that motion was to avoid prejudice to the ongoing criminal prosecutions by permitting criminal defendants to circumvent the normal procedural rules for obtaining discovery in criminal cases.  At oral argument on July 29, 2009, this Court denied DOJ's request for a stay, reasoning primarily that the stay would prejudice Chakrapani, who was not a defendant in a criminal proceeding, as the criminal complaint against him was

---

10, 2009, Koulouroudis pleaded guilty to one count of conspiracy to commit securities fraud and one count of securities fraud. *See* Docket Entry 23 (Transcript),  09 Cr. 440 (PGG).  In addition, although not subject to judicial notice, while the privilege log submitted by the FBI listed certain 302s as "draft" documents, final 302s have now been prepared.

dismissed without prejudice.

## C.    Contorinis's Touhy Request

By letter dated November 23, 2009, with an accompanying subpoena (the "Contorinis Request") Contorinis made a request pursuant to the Department of Justice's *Touhy* regulations, *see* 28 C.F.R. § 16.21 *et seq.*; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), seeking the production of "All documents including any reports, emails, recordings or any other type of record related to statements made by defendant Nicos Achilleas Stephanou to any government official or entity." Declaration of Roberto Finzi, dated December 8, 2009 ("Finzi Decl."), Exhs. B-C. In addition, the letter, dated November 23, 2009, clarified that Contorinis "do[es] not seek to discover information regarding [the USAO's] mental impressions of the case." *Id.* Exh. B. The letter stated, however, that "to the extent that your internal communications about the case include factual information or summaries of factual information, we ask that we receive those materials in redacted form." *Id.*[2]

By letter dated December 2, 2009, the USAO responded to the Contorinis Request (the "USAO Response"), and requested that Contorinis withdraw the subpoena. Finzi Decl., Exh. D. The USAO Response explained that the following documents were responsive, but would not be produced:

---

[2]    The Contorinis Request followed a similar request by Chakrapani for the statements of Stephanou. In response to Chakrapani's request and his subsequent motion to compel, the USAO prepared and submitted to the Court two privilege logs, both dated October 7, 2009, listing documents containing statements of Stephanou – primarily contained in FBI 302s. Light Decl., Exhibit 2. In support of its claims of privilege for those documents, the USAO also submitted the Declarations of Deputy United States Attorney Boyd M. Johnson III, and FBI Assistant Special Agent In Charge Peter Grupe. In addition, in support of its assertion that the law enforcement investigation is ongoing, the USAO submitted the *Ex Parte* Declaration of Reed Brodsky, dated October 7, 2009.

(i)     FBI 302s;
(ii)    Documents listed on the USAO privilege log, dated Oct. 7, 2009, numbered: 1-10, 12-13, 15-16, 20;
(iii)   Recorded conversations between Stephanou and others, as well as Stephanou's handwritten corrections to certain draft transcripts of recorded conversations as follows:

| Date/Time | Participants |
| --- | --- |
| 1/5/09 at 3:47 p.m. | Stephanou and Koulouroudis |
| 1/6/09 at 12:32 p.m. | Stephanou and Chakrapani |
| 1/6/09 at 1:26 p.m. | Stephanou and UBS employee (Thomas LNU) |
| 1/6/09 at 1:36 p.m. | Stephanou left voicemail for Koulouroudis |
| 1/6/09 at 2:19 p.m. | Stephanou and Paparrizos |
| 1/6/09 at 3:32 p.m. | Stephanou left voicemail for Koulouroudis |
| 1/12/09 at 1:16 p.m. | Stephanou left voicemail for Koulouroudis |
| 1/12/09 at 2:50 p.m. | Stephanou and Koulouroudis |
| 1/12/09 at 3:43 p.m. | Stephanou left voicemail for Koulouroudis |
| 1/16/09 at 1:54 p.m. | Stephanou and Koulouroudis |
| 1/28/09 at 2:13 p.m. | Stephanou and Koulouroudis |

In addition, the USAO noted that the following responsive documents either had already been produced to counsel or were otherwise publicly available: waiver of indictment (publicly available); Stephanou cooperation agreement (previously produced to counsel); transcript of Stephanou's guilty plea on 5-7-09 (publicly available); recorded conversations between Stephanou and Contorinis, dated 1/5/09 at 3:09 p.m., 1/12/09 at 12:46 p.m., (previously produced to counsel).[3]

_____

[3]   Out of an abundance of caution the USAO also noted that it would consider a U.S. Marshals Service form for Stephanou, containing personal "pedigree" information, to contain "statements" of Stephanou.  However, the personal information on this form is protected under the Privacy Act of 1974, 5 U.S.C. § 552a.  Finzi Decl., Exh. D, at p.2 n.1.  The USAO explained that unless counsel informed the USAO otherwise, it would not consider this document responsive.  Counsel did not indicate that it sought this information in its motion to compel.
        Subsequent to the December 2, 2009, letter, the USAO released to Contorinis, without waiver or prejudice to any arguments, the following additional documents: Stephanou's proffer agreement and Stephanou's signature on a 1-5-09 letter reflecting application of the proffer agreement to meetings with FBI agents.  In addition, on or before December 23, 2009, the USAO will release copies of the recorded conversations between Stephanou and others listed above, and Stephanou's handwritten corrections to certain draft transcripts of recorded

The USAO withheld the FBI 302s on the basis of law enforcement privilege and the documents listed on the USAO privilege log on the basis of law enforcement and work product privileges.

## ARGUMENT

## POINT I

**THIS COURT SHOULD NOT DECIDE THE MOTION TO COMPEL UNTIL IT HAS RESOLVED THE SEC'S MOTION TO DISMISS CHAKRAPANI FROM THIS SUIT AND THE GOVERNMENT'S RENEWAL OF ITS MOTION TO STAY DISCOVERY**

**A.      This Court Should First Resolve the SEC's Motion to Dismiss Chakrapani**

It is well established that the Court has broad discretion to control the discovery process by staying discovery.  *See. e.g.*, *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985) (affirming grant of summary judgment and stay of discovery); *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 105 (2d Cir. 1981) ("the district court acted well within its discretion in preventing the plaintiff from burdening the defendants with a needless round of discovery"); *Spencer Trask Software v. Rpost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (under Rule 26(c) "a court has discretion to stay discovery for good cause.").  This Court should first resolve the SEC's motion to dismiss Chakrapani.  If Chakrapani is dismissed from this action, the Court should then consider and grant the Government's renewed request for a limited stay of discovery.  *See* Motion for Stay filed by the USAO (Docket Entres ## 49-51), filed on or about July 2, 2009.  In the event Chakrapani is dismissed, the remaining civil action before this Court would be essentially a parallel civil proceeding to a federal criminal

---

conversations.  Light Decl., ¶ 3.

5

prosecution pending before this Court.

The Court previously denied the Motion for Stay in large part based on the fact that Chakrapani was not a criminal defendant. *See, e.g.*, Transcript of Argument, July 29, 2009, at 11, lines 9-16 (Light Decl., Exh. 3) ("That's my concern generally, that everyone is using this civil case for their advantage in the criminal case. The only guy who doesn't have a dog in the criminal fight is [Chakrapani] . . . . And I think he makes a very compelling point that if there is any real prejudice here it's [Chakrapani] who is feeling it.").[4]

If the civil action is dismissed against Chakrapani, what remains of the civil action will become purely parallel to the criminal proceedings. In such circumstances, courts routinely grant stays of civil discovery pending the resolution of criminal proceedings. *See, e.g.*, *In re WorldCom, Inc. Securities Litigation*, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501, at *10 (S.D.N.Y. Dec. 5, 2002) (barring discovery from Government witnesses in parallel civil proceeding pending completion of criminal proceedings); *SEC v. Doody IV*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (staying discovery in civil action pending resolution of criminal action); *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993) (granting stay of SEC enforcement action pending criminal investigation); *Board of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 641 (S.D.N.Y. 1991) (same); *SEC v. Control Metals Corp.*, 57 F.R.D. 56, 58 (S.D.N.Y. 1972) (same); *Founding Church of Scientology of Washington, D.C. v. Kelley*, 77 F.R.D. 378, 381 (D.D.C. 1977) (refusing to compel federal officials to answer interrogatories during pendency of federal grand jury

---

[4]   The USAO takes no position as to whether the Court should likewise stay discovery of the civil defendants if it stays discovery as to Stephanou.

investigation); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("where both civil and criminal proceedings arise out of the same or related transactions, [the] government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter").

The basis for a stay of parallel civil proceedings arises from the fundamental differences between civil and criminal proceedings, and the compelling public interest in facilitating enforcement of the criminal laws.  As the Fifth Circuit has explained:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority:  which case should be tried first.  Administrative policy gives priority to the public interest in law enforcement.  This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962); *see also In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).

Discovery in a civil proceeding may not be used to circumvent the limitations on discovery in a criminal action.  Discovery under the Federal Rules of Criminal Procedure is narrowly circumscribed.  The criminal procedure rules generally limit discovery to certain statements of the defendant, *see* Fed. R. Crim. P. 16(a)(1)(A), the defendant's prior criminal record, *see* Fed. R. Crim. P. 16(a)(1)(B), and other information that is "material to the preparation of the defendant's defense or . . . intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant," *see* Fed. R. Crim. P. 16(a)(1)(C).  Rule 16(a)(2) of the Federal Rules of Criminal Procedure expressly precludes

discovery of "statements made by government witnesses or prospective government witnesses, except as provided in 18 U.S.C. § 3500."  In turn, Section 3500 provides that in criminal cases, the statements of Government witnesses shall not be "the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."[5]  In addition, absent "exceptional circumstances" and a court order, a criminal defendant may not conduct depositions in a criminal case.  Fed. R. Crim. P. 15(a).

Criminal discovery is narrow for compelling reasons, namely that (i) broad disclosure of the details of the prosecution's case will increase the likelihood of perjury and manufactured evidence; (ii) revelation of the identity of prospective Government witnesses will create opportunities for intimidation of those witnesses and subornation of perjury; and (iii) criminal defendants will unfairly surprise the prosecution at trial with information gained through discovery, while relying on the privilege against self-incrimination to shield against any attempt by the Government to obtain relevant evidence from the defendants themselves.  *See Campbell*, 307 F.2d at 487 n.12; *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1365-66 (S.D.N.Y. 1988); *Kelley*, 77 F.R.D. at 381; *see also United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974) ("Fear of intimidation of witnesses and concern over efforts to suborn perjury were not flights of fantasy by those who drafted Rule 16").  Indeed, courts have repeatedly emphasized that liberal civil discovery processes should not be allowed to undermine the criminal process. *See generally Chestman*, 861 F.2d at 50 (recognizing governmental interest in "prevent[ing]

---

[5]     Although a district court has no authority to order early production of such witness statements, *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974), the U.S. Attorney's Office will provide Contorinis with 3500 material and other discovery reasonably in advance of trial by agreement among the parties.

discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter").

In this case, there is minimal danger of prejudice to the parties.  First, both Stephanou and Contorinis have already invoked their Fifth Amendment rights, and others may invoke their Fifth Amendment rights as well.  Thus, no testimonial discovery will be obtained either on behalf of the plaintiff SEC from a key witness, or from Contorinis as defendant, prior to resolution of the criminal action.  In contrast, a stay will prevent the imbalance that would result from exposure of a key cooperating witness to the government prior to the criminal trial. Second, as the Second Circuit has recognized, a civil party is not prejudiced by a stay because the party will have ample opportunity for discovery when the stay is lifted:

> Defendant has failed to show any prejudice to him . . . arising out of the government's intervention.  The only result of the intervention has been the staying of discovery, an order the district court could have entered sua sponte. Moreover, so far as preparation for the trial in the civil action is concerned, appropriate opportunities for discovery can be allowed when the stay is lifted. Chestman's defense of the civil case is thus not affected.

*Chestman*, 861 F.2d at 50.  Therefore, the parties to this action will not suffer undue prejudice.

Accordingly, and for the reasons previously set forth in the Motion for Stay, this Court should first determine whether to dismiss Chakrapani from the civil action, and if he is dismissed, the Court should grant a limited stay of document discovery regarding Nicos Stephanou's statements until such time as documents are produced in *United States v. Contorinis*, , 09 Cr. 1083 (RJS), pursuant to 18 U.S.C. § 3500, and to stay oral testimony by Stephanou until after he has testified in that case.

## POINT II

**THIS COURT SHOULD DENY THE MOTION TO COMPEL PRODUCTION OF THE REQUESTED DOCUMENTS**

**A.   This Court Need Not Resolve Whether the Standard of Review is Arbitrary and Capricious Under the APA as the Motion Should Be Denied Under Any Standard**

"In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity." *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999).  With respect to the last element, well established principles of sovereign immunity dictate that the United States cannot be sued without its consent.  *See United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  An action seeking to compel a federal agency or federal employee to provide discovery to a third party "is barred by sovereign immunity in the absence of a waiver." *U.S. Envtl. Prot. Agency v. General Elec. Co.* ("*EPA I*"), 197 F.3d 592, 597 (2d Cir. 1999), *modified on other grounds*, 212 F.3d 689 (2d Cir. 2000) ("*EPA II*").

The Second Circuit has held that "the only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the [Administrative Procedure Act]." *EPA I*, 197 F.3d at 598 (explicitly rejecting Ninth Circuit's contrary holding in *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994)).  Specifically, section 702 of the Administrative Procedure Act ("APA"), provides, in pertinent part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United

States or that the United States is an indispensable party.

5 U.S.C. § 702.

Once a waiver of sovereign immunity has been established, "the second inquiry comes into play – that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief." *FDIC v. Meyer*, 510 U.S. 471, 484 (1994). The Second Circuit recognized in *EPA I* that a party seeking review of an agency decision promulgated under the *Touhy* regulations has the choice of bringing a separate lawsuit pursuant to the cause of action established by the APA, or seeking "enforcement of a non-party subpoena *duces tecum* for discovery against the government through a motion to compel compliance" pursuant to Rule 45. *EPA I*, 197 F.3d at 599.

In *EPA II*, the Second Circuit was confronted with but did not resolve the question of whether section 706's standard of review was applicable in a motion to compel agency compliance with a subpoena brought pursuant to Rule 45. *See EPA II*, 212 F.3d at 689; *cf. In re SEC ex rel. Glotzer*, 374 F.3d 184, 191 (2d Cir. 2004) (describing the issue reserved by the Court in *EPA II* as "whether the APA's standard of review . . . should govern the district court's evaluation of the EPA's refusal to comply with [a] subpoena," and noting that "some of our sister circuits have affirmatively held that APA § 706 does not apply *to motions to compel agency compliance with subpoenas*" (emphasis added)). The USAO takes the position that an arbitrary and capricious standard would govern review of a motion to enforce a subpoena seeking testimony from federal employees, *see COMSAT Corp.*, 190 F.3d at 277; *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also Moran v. Pfizer*, No. 99 Civ.

11

9969 (WHP)(HBP), 2000 WL 1099884 (S.D.N.Y. Aug. 4, 2000).[6]  *But see Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001); *Exxon Shipping Co.*, 34 F.3d at 779.  The Court need not reach the issue in the present case, because whether the Court applies the APA's arbitrary and capricious standard, or the standards of Rules 26 and 45 of the Federal Rules of Civil Procedure, the non-disclosure was proper and this Court should deny Contorinis's motion to compel production.

_____

[6]  Section 706 dictates the narrow scope of review that the district court shall apply in an APA action: "[T]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A); *see also Supreme Oil Co. v. Metropolitan Transp. Auth.*, 157 F.3d 148, 151 (2d Cir. 1998).  This standard of review is routinely applied in APA actions challenging an agency's *Touhy* decision.  *See, e.g., Puerto Rico v. United States*, 490 F.3d 50, 60-61 (1st Cir. 2007); *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 315 (7th Cir. 1994); *Davis Enters. v. U.S. Envtl. Prot. Agency*, 877 F.2d 1181, 1186 (3d Cir. 1989).  An agency action is "arbitrary and capricious" within the meaning of section 706(2)(A) if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.*; *see also LaFleur v. Whitman*, 300 F.3d 256, 267 (2d Cir. 2002) (petition for review of EPA order regarding permit application).

In the *Touhy* context in particular, DOJ has discretion to determine whether its employees shall be permitted to provide documents in cases, such as this one, where the agency is not a party.  *See, e.g., Edwards*, 43 F.3d at 317 ("It is clear from the Department of Justice regulations governing the disclosure of confidential information, as well as the common law doctrine in *Touhy* and the litany of succeeding case law, that the United States may restrict the release of its information.").  As the Fourth Circuit has observed, "[w]hen an agency is not a party to an action, its choice of whether or not to comply" with a *Touhy* request "is essentially a policy decision about the best use of the agency's resources," and the decision to deny third-party discovery requests accordingly is "committed to agency discretion."  *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 278 (4th Cir. 1999).  The "compromise between public and private interests" embodied by the *Touhy* process "is necessary to conserve agency resources and to prevent the agency from becoming embroiled in private litigation."  *Id.*

**B.     The Requested Production of Documents Is Barred By the
         Law Enforcement Privilege**

**1.      The Law Enforcement Privilege Applies**

The Government's privilege not to disclose information gathered in the course of a law

enforcement investigation is well recognized.  *See United States v. Amodeo*, 44 F.3d 141, 147

(2d Cir. 1995); *In re Dep't of Investig. of the City of N.Y. v. Meyerson*, 856 F.2d 481, 483-84 (2d

Cir. 1988).  The privilege "is designed to prevent disclosure of law enforcement techniques and

procedures, to preserve the confidentiality of sources, to protect witness and law enforcement

personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to

prevent interference with an investigation."  *Amodeo*, 44 F.3d at 147 (citation omitted).  The

privilege is designed not only to facilitate investigations, but also "to protect individuals whose

reputation may be damaged by disclosure of investigative leads or statements from witnesses

developed during the investigation."  *Dep't of Investigation*, 856 F.2d at 484.

Accordingly, the law enforcement privilege protects from disclosure (i) law enforcement

techniques and procedures; (ii) confidential sources; (iii) the identities of witnesses and law

enforcement personnel involved in investigations; and (iv) information that would otherwise

interfere with an investigation.  *Dep't of Investigation*, 856 F.2d at 484, 485-86; *Borchers*, 874 F.

Supp. 80. Moreover, "an investigation need not be ongoing for the law enforcement privilege to

apply as 'the ability of a law enforcement agency to conduct future investigations may be

seriously impaired if certain information is revealed.'"  *Nat'l Congress for Puerto Rican Rights*

*v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000) (citing *Morrissey v. City of New York*,

171 F.R.D. 85, 90 (S.D.N.Y. 1997)) (additional internal citation omitted); *see also MacNamara*

*v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008).

13

The Contorinis Request expressly seeks documents from the investigative files of the USAO.  The Johnson Declaration and Grupe Declaration, in addition to the *Ex Parte* Brodsky Declaration, all explain in detail how disclosure of the documents Contorinis seeks would impair the ongoing investigation and prosecution; the subpoenaed materials are therefore privileged from disclosure.  *See, e.g.*, *Borchers v. Comm'l Union Assurance Co.*, 874 F. Supp. 78, 80-81 (S.D.N.Y. 1995) (quashing subpoena served on fire department for documents concerning arson investigation).  *See* Johnson Decl., ¶¶ 13, 18, 19, 21, 22, 23; Grupe Decl., ¶¶ 17-19.

To the extent that Contorinis does not seek information relating to Stephanou's statements about other individuals, but only statements regarding his own conduct, the premature release of these documents would impair the ongoing investigation into and prosecution of him as a criminal defendant.  For example, premature release of these documents would permit individuals to shape their testimony and would prematurely reveal the USAO's criminal case. Johnson Decl., ¶ 22; Grupe Decl. ¶ 17.  Accordingly, the law enforcement privilege applies.

## 2.    Contorinis Cannot Demonstrate a Need for the Privileged Information That Outweighs the Harm Caused By Disclosure

Once the existence of the privilege is established, the Court must balance "the public interest in nondisclosure against the need of the particular litigant for access to the privileged information."  *MacNamara*, 249 F.R.D. at 79 (internal quotation marks and citations omitted).

The factors set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), do not support disclosure.  It is first important to note that the *Frankenhauser* factors, which are non-exhaustive, are not to be applied rigidly.  To the contrary, "a district court has considerable leeway in weighing the different factors." *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).  Furthermore, the *Frankenhauser* court itself recognized that "the balancing task will

14

often be difficult and the ingredients of the test will vary from case to case." *Frankenhauser*, 59 F.R.D. at 344.  After weighing the factors, the Court should find that the law enforcement privilege protects the documents at issue from disclosure.[7]

1.      *"The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information" and "The impact upon persons who have given information of having their identities disclosed"*

Disclosure of the 302s and the contents of witness interviews would harm the FBI and the USAO by exposing prematurely information to be offered as part of its investigations and prosecutions.  Johnson Decl. ¶ 22; Grupe Decl. ¶ 17.  Stephanou's identity as a cooperating witness is publicly known.  However, both the 302s and the documents listed on the USAO privilege log contain information regarding other potential cooperating witnesses, as well as potential unindicted co-conspirators, as set forth fully in the *Ex Parte* Brodsky Declaration.

2.      *"Whether the information sought is factual data or evaluative summary"*

The 302s are the FBI agents' reports documenting information obtained by investigative personnel that may become the subject of testimony.  Grupe Decl., ¶ 15.  These documents reveal not only names and identifying information of persons who may be the subject of ongoing investigations, including transactions of interest to the USAO and FBI.  *Id.* ¶ 16.  Likewise, the responsive documents listed on the USAO privilege log (numbered 1-10, 12-13, 15-16 and 20), including, for example, the Cooperation Memorandum, AUSA notes regarding impressions of the Stephanou proffer, an annotated version of the Cooperation Agreement containing names of

---

[7]   Notably, *SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005), which Contorinis cites in favor of disclosure, does not address the law enforcement privilege at all.

unindicted co-conspirators, AUSA chronologies of events and analyses of proof are evaluative summaries; thus, this factor favors non-disclosure. *Ex Parte* Brodsky Decl. ¶ 23.

       3.      *"Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question"*

Courts have held that this factor "is often considered by courts to be the most important." *SEC v. Shanahan*, 2009 WL 1955747, at *3 (E.D. Mo. July 6, 2009); *Lykken v. Brady*, 2008 WL 2077937, at *7 (D.S.D. May 14, 2008) ("In general, courts interpreting [the law enforcement privilege in the FOIA context] have held that the primary concern over disclosure of law enforcement reports is to prevent a party who is himself the subject of a criminal investigation from obtaining premature discovery of law enforcement actions that may be taken against him."). Contorinis is a criminal defendant in an action pending before this Court.  This factor weighs heavily in favor of non-disclosure.

       4.      *"Whether the police investigation has been completed"*

As set forth in both the Johnson Declaration and the *Ex Parte* Brodsky Declaration, the USAO's investigation based on Stephanou's statements is both open and active, and this factor weighs heavily in favor of non-disclosure. To the extent that Contorinis seeks only statements regarding his own conduct, rather than the conduct of others, the prosecution has not yet been completed; accordingly, the USAO and the public interest would be harmed by premature revelation of the statements. Moreover, Contorinis's argument that the investigation into him has been completed is merely a straw man, as courts in this district have held that the privilege may continue to apply even after completion of an investigation.  *See, e.g.*, *Borchers*, 874 F. Supp. at 80 (law enforcement privilege may continue after investigation is closed).

5.      *"Whether the [requester's] suit is non-frivolous and brought in good faith"*

Since Contorinis did not bring the suit, this factor is neutral.  Given that the USAO is not a party to the case, though, the factor's significance is minimal.  Courts are especially mindful of the burden placed on non-parties.  *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwarranted burden thrust upon nonparties is a factor entitled to specific weight in evaluating the balance of competing needs").

6.      *"Whether the information sought is available through other discovery or from other sources"*

Although Contorinis contends that he cannot obtain this information through other means because Stephanou has asserted his rights under the Fifth Amendment, this argument fails for two reasons.  First, Contorinis knows the substance of Stephanou's testimony based upon Stephanou's publicly available statements, including statements during his plea hearing in which he conceded that he had tipped Contorinis with material non-public information regarding Albertson's.  Second, to the extent that Contorinis does not know every detail that Stephanou has reported, this "unavailability" is merely temporary.  Once Stephanou has testified in the criminal action, his statements will be public.  Indeed, prior to the criminal trial, the USAO will release his statements to Contorinis pursuant to its legal obligations under 18 U.S.C. § 3500.[8]  Contorinis argues that the evidence cannot be obtained through other means.  Contorinis Memorandum of Law ("Mem") at 12-13.  However, this unavailability is merely temporary.  The USAO will be obligated to produce the Stephanou statements pursuant to 18 U.S.C. § 3500 in the criminal case,

---

[8] Contorinis's argument that there would be no harm to the USAO from the release of these documents because it was prepared to release them prior to Koulouroudis's guilty plea, is without merit.  Had the Koulouroudis matter proceeded to trial, the USAO would have been obligated, pursuant to 18 U.S.C. § 3500, to turn over Stephanou's statements.

17

and Stephanou will likely testify there.  Accordingly, because the information he seeks is not permanently unavailable, but will shortly become available, this factor weighs in favor of non-disclosure.

       7.     *"The importance of the information sought to the [requester's] case"*

As Contorinis seeks the testimony of a witness implicating him in securities fraud, this factor favors disclosure.

       8.     *"The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure,"* and *"Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation"*

These factors are not at issue on this motion.

Considering all of the factors, Contorinis has not demonstrated that his need for the documents outweighs the risks of non-disclosure.  The strong governmental and public interests in ensuring that criminal prosecutions are not compromised outweighs those few factors that might favor disclosure here, especially because any disadvantage to the civil litigants is temporary, and will cease once criminal disclosures are completed.

## C.    The Work Product Privilege Applies

In his motion, Contorinis indicated that he does not seek to discover information regarding the AUSAs' mental impressions of the case.  However, Contorinis argues that to the extent that internal communications about the case include factual information or summaries of factual information, the USAO should produce those materials in redacted form.

The request on its face still seeks information protected under the attorney work product doctrine.  The attorney work product doctrine is codified in Federal Rule of Civil Procedure

26(b)(3), which provides that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  The attorney work product privilege "protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation."  *A. Michael's Piano*, 18 F.3d at 146 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  In determining whether information is attorney work product, courts have asked "whether the document was created 'with an eye toward litigation.'"  *Id.* at 146 (quoting *Hickman*, 329 U.S. at 511).  The information Contorinis requests, as well as all decisions made regarding what information to gather in the course of the investigation, or what facts are relevant to the investigation or prosecution, were developed "with an eye toward litigation;" namely, the prosecution of Contorinis and possibly others.  Accordingly, it is protected from disclosure by the attorney work product doctrine.  *See Germosen v. Cox*, 1999 WL 1021559, at *14 (S.D.N.Y. Nov. 9, 1999) (memoranda concerning Government investigation of criminal target were not discoverable because of attorney work product doctrine); *Winterstein v. DOJ*, 89 F. Supp. 2d 79, 81-82 (D.D.C. 2000) (same).  "Summaries" of factual information would likewise fall within this work product doctrine, as such summaries would reflect AUSA mental impressions of the case.

Finally, in the materials listed on the USAO's privilege log, which were previously provided to the Court for *in camera* review, every reference to a statement of Stephanou concerning Contorinis is merely cumulative of the information contained in the FBI 302s, which will be released pursuant to 18 U.S.C. § 3500 in the criminal case.  Accordingly, there is no basis

to pierce the work product privilege here.  Even under the Federal Rules of Civil Procedure, which Contorinis argues is the appropriate standard here, Rule 26(c)(1) permits the court to forbid disclosure or discovery on a showing of good cause and Rule 45(c)(3) provides that the court should quash a subpoena when it "creates an undue burden."

## CONCLUSION

For the reasons set forth above, and in the USAO's prior motion for a limited stay of discovery, this Court should (a) first resolve the pending motion to dismiss the civil action against Chakrapani; (b) if the Court dismisses the case against Chakrapani, grant the requested stay of discovery as to Stephanou; and (c) if necessary, deny the motion to compel.

Respectfully submitted,

Dated: New York, New York                           PREET BHARARA
       December 17, 2009                     United States Attorney

By:      /s/
            SARAH E. LIGHT
            Assistant United States Attorney
            86 Chambers Street, 3rd Floor
            New York, New York 10007
            Telephone: (212) 637-2774

20