UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

                v.

NICOS ACHILLEAS STEPHANOU,
RAMESH CHAKRAPANI, ACHILLEAS
STEPHANOU, GEORGE PAPARRIZOS,
a/k/a GEORGIOS PAPARRIZOS,
KONSTANTINOS PAPARRIZOS,
MICHAEL G. KOULOUROUDIS, and
JOSEPH CONTORINIS,

                Defendants.

Civil Action No. 09-1043 (RJS)

# DEFENDANT JOSEPH CONTORINIS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE SECURITIES AND EXCHANGE COMMISSION AND THE UNITED STATES ATTORNEY'S OFFICE AND IN OPPOSITION TO THE UNITED STATES ATTORNEY'S OFFICE MOTION FOR A LIMITED STAY OF DISCOVERY

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
T: 212-373-3000

Attorneys for Defendant
Joseph Contorinis

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................ 1

    A.    This Court Should Again Deny the U.S.A.O.'s Motion to Stay Discovery ............................................................................ 2

    B.    The Law Enforcement Privilege Does Not Protect From Otherwise Lawful Disclosure a Known Cooperator's Statements About a Charged Defendant ............................... 6

        1.    The Government Has Not Met Its Threshold Burden for the Law Enforcement Privilege to Apply ..................... 6

        2.    If the Privilege Does Apply, Any Potential Harm to the Government May be Remedied by a Protective Order ......... 8

    C.    The Work Product Privilege Should Not Prevent the Government From Producing the Documents .......................................... 10

CONCLUSION ........................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bd. of Governors of the Fed. Reserve Sys.* v. *Pharaon,*
    140 F.R.D. 634 (S.D.N.Y. 1991) .................................................................................3

*Borchers* v. *Commercial Union Assurance Co.,*
    874 F. Supp. 78 (S.D.N.Y. 1995) ............................................................................ 7-8

*Founding Church of Scientology of Washington, D.C., Inc.* v. *Kelley,*
    77 F.R.D. 378 (D.D.C. 1977) .....................................................................................3

*Horn* v. *District of Columbia,*
    210 F.R.D. 13 (D.D.C. 2002) .....................................................................................5

*In re Worldcom, Inc. Secs. Litig.,* Nos. 02 Civ. 3288, Civ. 4816,
    2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002) ...........................................................3

*King* v. *Conde,*
    121 F.R.D. 180 (E.D.N.Y. 1988) ..............................................................................8

*MacNamara* v. *City of New York,*
    249 F.R.D. 70 (S.D.N.Y. 2008) ................................................................................8

*Nat'l Congress for Puerto Rican Rights* v. *City of New York,*
    194 F.R.D. 88 (S.D.N.Y. 2000) ............................................................................7, 9

*S.E.C.* v. *Cioffi,*
    No. 08-CV-2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ...............................5

*S.E.C.* v. *Control Metals Corp.,*
    57 F.R.D. 56 (S.D.N.Y. 1972) ..................................................................................3

*S.E.C.* v. *Doody,*
    186 F. Supp. 2d 379 (S.D.N.Y. 2002) .......................................................................3

*S.E.C.* v. *Downe,*
    No. 92 Civ. 4092, 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) ..................................3

*S.E.C.* v. *Oakford Corp.,*
    181 F.R.D. 269 (S.D.N.Y. 1998) .........................................................................2, 4

*S.E.C.* v. *Thrasher,* No. 92 Civ. 6987, 1995 WL 46681
    (S.D.N.Y. Feb. 7, 1995) .............................................................................................9

*United States* v. *Davis,*
    131 F.R.D. 391 (S.D.N.Y. 1990) ..............................................................................8

*United States v. Fin. Indus. Regulatory Auth. ("FINRA"),*
　　607 F. Supp. 2d 391 (E.D.N.Y. 2009) ....................................................................................4

*United States v. One 1964 Cadillac Coupe DeVille,*
　　41 F.R.D. 352 (S.D.N.Y. 1966) ...............................................................................................3

*Volmar Distributors, Inc. v. New York Post Co.,*
　　152 F.R.D. 36 (S.D.N.Y. 1993) ...............................................................................................3

Defendant Joseph Contorinis respectfully submits this reply memorandum in further support of his motion to compel the production of documents from both the Securities and Exchange Commission ("S.E.C.") and the United States Attorney's Office for the Southern District of New York ("U.S.A.O.") (together, "the government"), and in opposition to the U.S.A.O.'s renewed Motion for a Limited Stay of Discovery.

## ARGUMENT

Eleven months ago the U.S.A.O. and the S.E.C. filed coordinated criminal and civil complaints against Joseph Contorinis. Presumably they did so knowing that Mr. Contorinis might fight both of the charges, and that the rules of discovery in the two cases would be different. Months later, the U.S.A.O. sought and obtained an indictment, this time knowing for certain that Mr. Contorinis would contest the charges brought by both the S.E.C. and the U.S.A.O., and knowing that the discovery available to Mr. Contorinis in the S.E.C. action was broader than the discovery allowed in the criminal case. Now, having already lost a motion to stay discovery in the S.E.C. action, the U.S.A.O. resurrects the argument that it would be "prejudiced" by the S.E.C.'s prosecution of its case. What it ignores in re-making the motion is that the "prejudice" cited continues to be completely of its own making.

The government's opposition makes two separate but related arguments: First, that discovery should be stayed pending completion of the criminal case, and second, that the materials requested – including reports of statements made by the government's sole cooperating witness, Nicos Stephanou – are covered by the law enforcement privilege and work product doctrine.

The government is wrong on all fronts. With respect to the claimed prejudice of proceeding simultaneously with the S.E.C. and criminal cases, the government simply cannot show prejudice from its own decision to file parallel actions. If the S.E.C. and U.S.A.O. believed

that simultaneous cases would cause them the harms now alleged, they could have (and would have) proceeded differently in bringing these cases. Likewise, and with respect to the specific basis for the law enforcement privilege – including the existence of an ongoing government investigation – the government has not identified how the disclosure of Mr. Stephanou's statements *about Mr. Contorinis* could conceivably prejudice any ongoing investigation, and why the redaction of statements relating to other defendants or stocks could not protect whatever true continuing interest in confidentiality exists.

For these reasons, Mr. Contorinis' motion to compel should be allowed, at least in so far as it seeks statements by Mr. Stephanou about Mr. Contorinis, and the U.S.A.O.'s renewed motion for a stay should be denied.

**A.    This Court Should Again Deny the U.S.A.O.'s Motion to Stay Discovery**

The U.S.A.O.'s motion for a stay of discovery has not improved with the passage of time. Despite its repeated claims to the contrary, the government will not be unfairly prejudiced if civil discovery proceeds alongside the criminal case. Having brought simultaneous civil and criminal proceedings, the government cannot now claim to be prejudiced – much less unfairly prejudiced – by its own choices.

The U.S.A.O. urges this Court to grant the stay because courts routinely grant stays in civil cases where there is also a parallel criminal proceeding. (Mem. of Law of the U.S.A.O. in Opposition to the Mot. to Compel Filed by Joseph Contorinis and in Support of a Renewed Mot. for a Limited Stay of Discovery ("U.S.A.O. Br.") at 6.) This claim alone does not provide a sufficient justification for the entry of a stay. *See S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 271 (S.D.N.Y. 1998) (noting that stays cannot be automatically granted simply because

2

other courts have done so, but are to be assessed according to a multifactor test.)[1] In evaluating whether to grant a stay, courts consider several factors, the most important of which is prejudice to the parties. *Volmar Distributors, Inc.* v. *New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (noting that the "basic goal" of the balancing test is to avoid prejudice).

As Mr. Contorinis' moving brief makes clear, the U.S.A.O. will not be unfairly prejudiced if a stay is not entered, and any potential prejudice can be addressed through the entry of a protective order. Indeed, this Court has already rejected the U.S.A.O.'s arguments regarding the prejudicial effects to the government of denying the stay. (*See* July 29, 2009 Conf. Tr. at 26-28). The U.S.A.O. tries to avoid the same result on its renewed motion by pointing to the Court's comment that it was concerned primarily with the effect a stay would have on Mr. Chakrapani.[2] (U.S.A.O. Br. at 6.) But with respect to prejudice to the government at least, the Court's reasoning applies equally to Mr. Contorinis.

---

[1] The cases that the U.S.A.O. cites in support of its argument are in any event distinguishable. In *In re Worldcom, Inc. Secs. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *7-8 (S.D.N.Y. Dec. 5, 2002), the defendants supported the stay. In *S.E.C.* v. *Downe*, No. 92 Civ. 4092, 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993), *Bd. of Governors of the Fed. Reserve Sys.* v. *Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991), and *S.E.C.* v. *Control Metals Corp.*, 57 F.R.D. 56 (S.D.N.Y. 1972), the S.E.C. and U.S.A.O. had not brought simultaneous proceedings, and therefore the conflict was not of its own making. Additionally, the defendant in *Control Metals* conceded that he sought to take depositions of Grand Jury witnesses in the civil case to aid in his criminal matter. *Id.* at 57. In *S.E.C.* v. *Doody*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002), the parallel criminal trial was scheduled for four weeks later than the Court's decision, so the stay therefore did not unduly delay the civil case. In *Founding Church of Scientology of Washington, D.C., Inc.* v. *Kelley*, 77 F.R.D. 378, 381 (D.D.C. 1977), the plaintiffs only sought information from those individuals involved in the grand jury investigation, despite the fact that others could provide the same information, demonstrating bad faith. Finally, in *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 354-55 (S.D.N.Y. 1966), the court indicated that the defendant's discovery request was "plainly" aimed at circumventing the more limited criminal discovery rules.

[2] Despite the U.S.A.O.'s suggestion to the contrary, the resolution of this motion does not hinge on the resolution of the S.E.C.'s motion to dismiss Mr. Chakrapani's case without prejudice. While production of the material to Mr. Chakrapani would clearly render it non-

3

This Court has previously rejected the U.S.A.O.'s argument that discovery related to Mr. Stephanou should be stayed because it would permit Mr. Contorinis to receive discovery before he would be entitled to it in the criminal case, noting that there is nothing "in the criminal rules that precludes defendants who happen to have the good fortune of being in both the civil and a criminal matter to get what they are entitled to under the civil rules." (July 29, 2009 Conf. Tr. at 26.) Indeed, the government will not be *prejudiced* if Mr. Contorinis receives the information early. Rather, they would simply be losing a tactical advantage in the criminal trial. The mere loss of a tactical advantage, however, does not justify a stay. In *United States v. Fin. Indus. Regulatory Auth.* ("*FINRA*"), 607 F. Supp. 2d 391, 394 (E.D.N.Y. 2009), the district court denied a government motion for a stay of FINRA arbitration pending a criminal case, noting that:

> the only 'prejudice' the Court can discern is that allowing the arbitration to go forward will result in the criminal defendants having more information than they would otherwise be entitled to at this stage under the Federal Rules of Criminal Procedure. This loss of the government's usual tactical advantage is insufficient to justify enjoining the arbitration.

*Id. See also*, *Oakford*, 181 F.R.D. at 272-73 ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, *there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage*.") (Emphasis added).

This Court has likewise rejected the U.S.A.O.'s argument that disclosure of Mr. Stephanou's testimony would permit Mr. Contorinis to manufacture evidence or otherwise

---

privileged as to Mr. Contorinis as well, Mr. Contorinis has an entirely independent right to the material being sought.

4

tailor his testimony. At the hearing on the Government's First Motion to Stay, this Court held that, "to the extent [tailoring] is a real risk, it exists independent of this civil case," because witness statements are provided in advance of that witness' testimony in a criminal trial. (July 29, 2009 Conf. Tr. at 27.) The U.S.A.O.'s position that revealing the identity of prospective government witnesses would lead to witness intimidation is equally groundless. (U.S.A.O. Br. at 8.) Mr. Contorinis has known from the beginning of this case that Mr. Stephanou is cooperating with the government, and there have not been any allegations of intimidation. Finally, the U.S.A.O.'s claim that Mr. Contorinis will unfairly surprise the U.S.A.O. at trial with information received from discovery in the civil case is absurd. (*Id.*) The discovery sought is material *in the U.S.A.O.'s possession*, and the U.S.A.O. can hardly be surprised by the use of information that comes from its own files. These arguments are therefore insufficient to support a motion in which the government bears the burden of persuasion. See *Horn v. District of Columbia,* 210 F.R.D. 13, 16 (D.D.C. 2002).

       Finally, that the government can show no real prejudice to its position – and certainly no prejudice that is not of its own making – is best demonstrated by its own actions in bringing these cases together. If there were a legitimate law enforcement interest that were threatened by the civil case, the U.S.A.O. and the S.E.C. should have (and could have) worked together to postpone the filing of the civil complaint until the criminal matter was resolved – just as they worked together to file the cases simultaneously. It is for this reason that "[c]ourts are justifiably skeptical of blanket claims of prejudice by the government where – as here – the government is responsible for the simultaneous proceedings in the first place." *S.E.C. v. Cioffi,* No. 08-CV-2457, 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008) (denying the U.S.A.O.'s motion to stay the parallel civil case).

5

The government's failure to articulate any unfair prejudice arising from the release of Mr. Stephanou's statements about Mr. Contorinis should be enough to decide this motion even absent a showing of any prejudice to Mr. Contorinis. But Mr. Contorinis can in fact show prejudice. Under the government's proposed approach, Mr. Contorinis would have to wait months to obtain the single most important discovery in the S.E.C.'s case: the statements made by his lone accuser. Under the government's view, if acquitted at a criminal trial, Mr. Contorinis would only then be free to begin taking full advantage of material contained in Mr. Stephanou's statements to begin preparing his defense, a process that could take months if not longer. Thus, the government's claim that the resolution of the criminal case could narrow the scope of the civil case is guilt (and guilty-verdict) assuming. If Mr. Contorinis is acquitted, the issues would not have been narrowed at all, and Mr. Contorinis would face a significant additional period of time under the S.E.C.'s charges.

The U.S.A.O. has failed to articulate any meaningful prejudice if the stay is not granted. Therefore, Mr. Contorinis' undeniable interest in ensuring the expeditious adjudication and resolution of all cases against him so he can resume his career outweighs the government's interest in the stay, and the Court should deny the U.S.A.O.'s request.

**B.   The Law Enforcement Privilege Does Not Protect From Otherwise Lawful Disclosure a Known Cooperator's Statements About a Charged Defendant**

*1.   The Government Has Not Met Its Threshold Burden for the Law Enforcement Privilege to Apply*

The government argues that disclosure of Mr. Stephanou's statements as memorialized in FBI 302s would harm the government's ongoing investigation by revealing other potential witnesses and unindicted co-conspirators. (U.S.A.O. Br. at 13-14; S.E.C.'s Mem. of Law in Opposition to Def. Joseph Contorinis' Mot. to Compel the Production of Documents from the S.E.C. and U.S.A.O. ("S.E.C. Br.") at 10.)

6

At least with respect to Mr. Stephanou's statements about Mr. Contorinis, the government is wrong. Those statements cannot credibly be considered part of any "ongoing" investigation. Mr. Contorinis has been indicted and presented. Discovery in his case is underway, and Mr. Stephanou's identity as a cooperating witness has been the subject of numerous publicly filed motions and has been acknowledged by the government (and by Mr. Stephanou's own counsel) in open court. The investigation of Mr. Contorinis cannot reasonably be said to be "ongoing" in any real sense of the term.

To the extent that the government seeks to protect truly ongoing investigations of others, it has failed to articulate how knowledge of Mr. Stephanou's statements could affect the actions of third parties. Persons who dealt with Mr. Stephanou know that he is cooperating. In fact, a *Wall Street Journal* article (published online and in the paper) informed readers that "Mr. Stephanou, who has pleaded guilty, is cooperating with the government." Peter Lattman, *An Insider Figure in Limbo,* THE WALL STREET JOURNAL, Dec. 19, 2009 at A22. If people who dealt with Mr. Stephanou believe that he may be providing information about their conduct, whatever motive they have to flee or obstruct justice already exists. They do not need to read his statements to confirm what they already suspect. Regardless, and in any event, information regarding persons other than Mr. Contorinis need not be disclosed to third parties at this stage. The government can seek protective orders (as it was prepared to do in providing those statements to Mr. Chakrapani and Mr. Koulouroudis), or seek permission to redact portions of witness statements not genuinely relevant to Mr. Contorinis.[3]

---

[3]   The U.S.A.O. cites *Nat'l Congress for Puerto Rican Rights* v. *City of New York* and *Borchers* v. *Commercial Union Assurance Co.* to support its argument that the privilege may apply after an investigation is complete. But again, this is only true where the agency's ability to conduct future investigations will be impaired by the disclosure. *Nat'l Congress for Puerto Rican Rights* v. *City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000); *Borchers* v.

   2.   *If the Privilege Does Apply, Any Potential Harm to the Government May be Remedied by a Protective Order*

The government's refusal to address the possible use of either a protective order or redactions is telling. *See e.g., MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (in balancing the interests, "[t]he court must also consider the value of appropriate protective orders and redactions") (internal quotation marks omitted); *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988) (protective order "can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement"). The use of a protective order or redactions (or both) might be particularly useful here, where at least some (and quite possibly most or all) of Mr. Stephanou's statements do not relate to ongoing investigations. Thus, the reasons articulated by the government for needing to maintain the confidentiality of the requested materials can be resolved. Mr. Contorinis, on the other hand, has no other avenue to obtain the information.

Indeed, the government concedes that Mr. Stephanou is not currently available to testify, and that Mr. Contorinis can only obtain the requested information he needs from either Mr. Stephanou or the government. (U.S.A.O. Br. at 17; S.E.C. Br. at 8.) This alone should establish Mr. Contorinis' substantial need for the material and defeat the government's claimed privilege. *United States v. Davis*, 131 F.R.D. 391, 396 (S.D.N.Y. 1990) (finding that, since the government did not dispute that the only available source for the required information was either

---

*Commercial Union Assurance Co.*, 874 F. Supp. 78, 80 (S.D.N.Y. 1995). Here, the U.S.A.O. has failed to articulate any incremental risk to future investigations that would be caused by the release of Mr. Stephanou's statements when the fact that he is cooperating is already known. In any event, the government cannot show that the law enforcement privilege should apply to the statements about Mr. Contorinis, and to the extent there is a legitimate concern with respect to any on-going investigations of other individuals, those investigations can be protected by the entry of a protective order – a fact that Mr. Contorinis noted many times in his prior brief, but which both the U.S.A.O. and the S.E.C. completely ignored in their replies.

the government or an individual claiming 5th Amendment protection, the movant had shown substantial need).

The S.E.C.'s argument that the analysis should differ because Mr. Stephanou is only "temporarily" unavailable should likewise be rejected. (S.E.C. Br. at 8-9.) In *S.E.C. v. Thrasher*, the court specifically noted that defendants were not required to prove that obtaining the information from the witnesses was impossible. Rather, "[a]ll that is needed is a showing that it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party." No. 92 Civ. 6987, 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995). There is no discussion of whether or not the witness need be permanently or temporarily unavailable – a fact that appears to be irrelevant to the analysis.[4]

Finally, the fact that Mr. Contorinis is a criminal defendant is not, as the government claims, the "most important" factor in determining whether the law enforcement privilege applies, and it is certainly not dispositive. (U.S.A.O. Br. at 16.) Courts differ on what is the most critical element, and this Court has recognized that a defendant's need for the information and the fact that he cannot obtain it from other sources is often viewed as "a most important factor." See, e.g., *Nat'l Congress for Puerto Rican Rights*, 194 F.R.D. at 96 (citing cases). Based on Mr. Contorinis' undeniable need for the requested material and its central importance to his ability to timely defend against the S.E.C.'s charges – coupled with the fact that Mr. Stephanou's cooperation has already been well publicized – this Court should conclude

---

[4] The U.S.A.O. also argues that because Mr. Stephanou's statements will be available after the criminal trial, there is no need for disclosure at this time. Again, the U.S.A.O.'s argument ignores the inevitable delay that would pass between resolution of the criminal case and resolution of the civil case if Mr. Contorinis is exonerated at his criminal trial. (U.S.A.O. Br. at 17-18.)

9

that the law enforcement privilege does not apply here, and order the production of the requested materials. At a minimum, the Court should reject the government's blanket assertion of an overbroad "privilege."

C.  **The Work Product Privilege Should Not Prevent the Government From Producing the Documents**

In its reply, the U.S.A.O. ignores the fact that the work product doctrine is a *qualified* privilege which can be overcome by a litigant's demonstrated need for the information if that information is otherwise unavailable. Fed. R. Civ. P. 26(b)(3). As described above and in his moving brief, Mr. Contorinis has met this burden. The information he seeks about Mr. Stephanou – the sole accusing witness in this case – is critical to the development of his defense. Mr. Contorinis is unable to obtain this material from any other source because Mr. Stephanou has asserted that he will invoke his 5th Amendment rights should Mr. Contorinis seek to depose him before the criminal case is resolved. (Letter from Christopher J. Morvillo to Kingdon Kase (July 8, 2009), attached as Ex. 1 to the S.E.C.'s Response to the D.O.J.'s Motion to Intervene dated July 9, 2009.)

The S.E.C. argues that Mr. Contorinis has not met his burden to overcome the privilege because Mr. Stephanou is not permanently unavailable and the information sought reflects counsel's thoughts and impressions. (S.E.C. Br. at 6-9). But the fact that Mr. Stephanou may only be temporarily unavailable does not change the analysis. (*See supra* at 9.) And, to the extent the material contains counsel's thoughts and impressions of the case, that information can be redacted. Thus, the work product doctrine must likewise yield in favor of Mr. Contorinis' substantial need for the material.

## CONCLUSION

For the foregoing reasons, Mr. Contorinis' Motion to Compel the production of documents from the government should be granted, either in whole or in part, and the U.S.A.O.'s renewed Motion for a Stay should be denied.

Dated:   January 6, 2009
        New York, New York

Respectfully submitted,

By: /s/ Roberto Finzi

Mark Pomerantz
mpomerantz@paulweiss.com
Theodore J. Wells
twells@paulweiss.com
Roberto Finzi
rfinzi@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000
F:  212-757-3990

Attorneys for Defendant
Joseph Contorinis

11